In the matter of the Excelsior Insurance Company.

ing first.    Under all the circumstances, we think the defendants should not have been charged with a higher rate of interest than was received for the fund while it was deposited in the trust company.

The judgment should be corrected, by the plaintiff remitting the amount of interest charged on $3700 over three per cent, and affirmed for the residue.

If the plaintiff refuses to remit the amount, the judgment must be set aside, and the case referred back to the referee for correction in this respect.

[NEW YORK GENERAL TERM, September 15, 1862.  *Ingraham, Barnard* and *Clerke,* Justices.]

In the matter of the EXCELSIOR INSURANCE COMPANY.

An insurance company was incorporated under the general law. By the 7th section of its charter it was provided that "the rights, powers and privileges now or hereafter conferred by law on this company, are hereby vested in and shall be exercised by a board of directors, to consist of forty persons." Subsequently the legislature passed an act which provided as follows : " The Excelsior Insurance Company is hereby authorized to reduce the number of its directors to twenty-one, instead of forty, as provided by its charter." *Held*, that in the absence of any provision in the act requiring the act of reduction to be done by the stockholders, at a meeting for that purpose, the power rested in the board of directors. CLERKE, J. dissented.
*Held, also*, that an election of directors could not be set aside as void and a new election ordered, on the ground that there had been no previous action taken by the stockholders to reduce the number of directors.
*Held, further*, that the neglect or refusal of the stockholders, at such election, to vote for the whole number, did not make the election illegal. Such as had a majority of the votes were elected ; and if there were vacancies left in the board of directors, in consequence of the omission to elect the whole number, the board had power, under the 8th section of the charter, to fill them, but not to hold a special election for that purpose.

THIS was an appeal from an order made at a special term, upon petition, setting aside an election of directors of the

Excelsior Insurance Company, in the city of New York, and ordering a new election.   The facts appear in the opinion of Justice Ingraham.

INGRAHAM, P. J.   This company was incorporated under the general law.   By the 7th section of the charter it is provided that " the rights, powers and privileges now or hereafter conferred by law on this company, are hereby vested in and shall be exercised by a board of directors to consist of forty persons."   In April, 1862, the legislature passed an act which provided as follows : " The Excelsior Insurance Company is hereby authorized to reduce the number of its directors to twenty-one, instead of forty, as provided by its charter." After the passage of this act, a notice directing an election to be held for directors, and specifying the time and place of the election, was duly published, and at such election the stockholders elected only twenty-one directors, who entered upon their duties.   The petition now asks to have the election set aside and a new election ordered, upon the ground that there had been no action taken by the stockholders to reduce the number of directors, and therefore the whole election is void. At special term the application was granted, and from this order the company appeal.

It appears to me to be clear that even if the correct number of the directors was forty instead of the reduced number, still the neglect of the stockholders to elect the whole number did not vitiate the election of those who had a majority of the votes cast.   No provision of the charter, and no law, compelled each stockholder to vote for the whole number of directors, and their refusal or neglect to vote for the whole number did not make the election illegal.   Such as had a majority of the votes were elected.   There may have been a tie vote as to some which would prevent the election of the whole number, and yet it would not be contended in such a case that the election of those who had a majority was void on that account.   It nowhere appears that stockholders were

not allowed to vote for as many as they pleased; and the returns do not show that any one, not even the petitioner, voted or desired to vote for any more. If the petitioner or any other stockholder claimed to have a right to vote for forty directors he should have exercised that right, and then he could have insisted on the admission of the forty persons having the largest number of votes to be directors, if he was right in his supposition that the number had not been properly changed.

The next question is as to the mode of putting into operation the provisions of the act of 1862, reducing the number of the directors. The decision of the special term appears to be based upon the supposition that the act of reduction should be by the stockholders, and not by the board of directors. The statute says, "The company is authorized to reduce the number of its directors," &c. It makes no provision for a meeting of the stockholders for that purpose. In the absence of any provision of that character, the power rested in the board of directors. Stockholders, as such, possess no powers in the management of a corporation, except specially authorized so to do by their charter. Their power ends with the election of the directors. Their acts, without the action of the board of directors, would be inoperative. This was clearly stated by Lott, J. in *McCullough* v. *Moss*, (5 *Denio*, 567, 575.) He says: "Where a charter invests a board with the power to manage the concerns of a corporation, the power is exclusive in its character. The corporators have no right to interfere, and courts will not, even on a petition of the majority, compel the board to do an act contrary to their judgment. The stockholders, as such, could do no corporate act. The directors were their representatives, and alone authorized to act. So also in *Conro* v. *Port Henry Iron Co.*, (12 *Barb.* 27, 63,) Willard, P. J. says: "The stockholders had no power to make a lease or do any other administrative act in the management of the affairs of the corporation. * * * When not acting in their official character, (as

directors,) and in the mode prescribed by law, their acts are no more binding than those of other private citizens."

This view of the question is founded on the general principles applicable to corporations. In the present case the provisions of the charter are so full as to remove any doubt, if it could exist, on this question.

The 7th section of the charter expressly gives to the board of directors, and vests in the board, all the rights, powers and privileges now or hereafter conferred by law on the company, and such powers are to be exercised by the board. The power to reduce the number of directors is given to the company by their corporate name. By this section the power is vested in the board of directors, and shall be exercised by them. Any other mode would be contrary to these provisions. The directors might with propriety have submitted to the stockholders the matter for their advice, but afterwards the action of the board of directors was necessary to carry it out.

We are then to inquire whether the board have so acted; and upon this point the papers are silent. Nothing appears in the case, except that pursuant to notice of an election the stockholders elected a less number than forty—and that the persons so elected entered upon their duties. Why the rest were not elected does not appear. As before suggested, an omission to elect the full number will not vitiate the election of the residue. If the board of directors have not accepted the act of 1862, and exercised the authority vested in them by that act, the number would still remain as fixed by the charter. In such a case there would be vacancies in the board of directors. The 8th section of the charter provides for filling such vacancies by the board if they exist; but no authority is given to hold a special election where only a part of the board has been elected.

There is not, in my judgment, any ground for setting aside the election of those who were elected, and no reason for ordering an election of other directors not chosen by the stock-

In the matter of the Excelsior Insurance Company.

holders. The provisions of the charter provide for such a case, and if the board of directors do not comply with the provisions of their charter, the remedy is different from that now sought by the petitioner.

I think it proper to add that (as heretofore shown) the power is with the board of directors, and that board can now remove any doubt that may exist by filling the vacancies in the present board, and adopting a formal resolution reducing the number of directors previous to the next election.

I think the order at special term should be reversed.

BARNARD, J. concurred.

CLERKE, J. (dissenting.) I agree with so much of the opinion of the presiding justice as asserts that when a charter invests a board with the power to manage the concerns of a corporation, the power is exclusive in its character, and the corporation have no right to interfere. But this principle, I consider, is confined to the ordinary affairs of the corporation; in other words, to the business in which it is engaged, and every thing incidentally necessary to the prosecution of that business. I do not think this power extends to any matter relating to the constitution or organization of the company; and hence, when the legislature, as in this case, authorizes the company "to reduce the number of its directors from forty to twenty-one," or to make any other organic change, the suffrages of the stockholders are necessary legally to effectuate it.

I am aware that the language of the 5th section of the charter expressly gives to the board of directors "all the rights, powers and privileges now or hereafter conferred by law on the company." This, no doubt, invests the board with all the rights, powers and privileges essential to the prosecution of the business of the company. The stockholders, as such, could perform no corporate acts; the directors are their representatives for this purpose; and they alone can

exercise the rights, powers and privileges necessary to the performance of such acts. But they have no right to undertake the performance of any act which effects any organic change in the constitution of the company, when the act of the legislature, allowing the change, states that the company is authorized to make it. I think it is left to the option of the stockholders alone, on due notice, to accept or reject the exercise of the power conferred by the act.

The special term, however, erred in entirely setting aside the election and ordering a new election for forty directors. The election sought to be set aside was good, as to the number who were elected. The order should therefore be accordingly modified, and a new election ordered for nineteen directors, to complete the number required by the charter. (*Matter of the Union Ins. Co.,* 22 *Wend.* 591.)

Order reversed.

[NEW YORK GENERAL TERM, September 15, 1862. *Ingraham, Barnard* and *Clerke,* Justices.]

---

JULIA A. C. WOOD, executrix, and others executors &c., *vs.* BENJAMIN F. HUNT and others.

When a party receives a conveyance of land or other property from an insolvent, without actually paying, securing or becoming bound to pay any consideration therefor, no further proof of knowledge or notice of the fraudulent intent of the grantor against his creditors, is necessary in order to charge the grantee with complicity in the fraud.

The subsequent voluntary payment by the grantee of valid debts existing against the grantor, or the purchase of obligations against him, or even the payment of some money, subsequently, to the grantor, will not create a presumption in favor of the good faith of the grantee, or sustain the validity of the conveyance.

Nor does the grantee, by such evidence alone, present a case which entitles him to demand, as a condition to the granting of relief to the creditors of such a grantor by adjudging it void and directing a sale of the premises,