Charles H. **POTTER** et al., Respondents,

v.

James C. **PATEE** et al., Appellants.

No. 25940.

Missouri Court of Appeals,
Kansas City District.

Jan. 19, 1973.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 1973.

Irving Achtenberg, Kansas City (Achtenberg, Sandler & Balkin, Kansas City, of counsel), for appellants.

Joseph L. Flynn, St. Joseph, for respondents.

Before PRITCHARD and WASSERSTROM, JJ., and LAURENCE SMITH, Special Judge.

PRITCHARD, Judge.

Plaintiffs were successful in securing a declaratory judgment that they were the duly elected and qualified officers and directors of the Pony Express Historical Association. That organization is an educational corporation, organized under the "General Not For Profit Act of Missouri," Chapter 355, RSMo., 1969, V.A.M.S., and has as its main purpose the operation of the old Patee House as a museum in St. Joseph, Missouri.

The basic contention is whether defendants are the duly elected officers and directors of the corporation by reason of an "adjourned" meeting to the Patee House from a duly called meeting at the Y.W.C.A., in St. Joseph, or whether plaintiffs are such officers and directors by reason of a "rump" meeting held by them at the Y.W.C.A. after the other group repaired to the Patee House.

It is admitted by the pleadings that the corporation, pursuant to its By-Laws and the Laws of Missouri, issued its Notice of Annual Meeting for December 6, 1970, at 2:30 p. m., at the Y.W.C.A. in St. Joseph. It is further admitted that the members of the corporation did assemble at the Y.W.C.A. The evidence is that notices of the annual meeting were not sent to Mr. Carl Goatcher and Mr. Gary Chilcote, who were purportedly expelled from membership by a named disciplinary committee, nor were notices of the meeting sent to twelve other purported suspended members of the association.

Pony Express Historical Association is governed by its Articles of Incorporation and its By-Laws. Article VIII of the By-Laws provides that procedures are to be governed by Robert's Rules of Order, unless such are inconsistent with the Articles or By-Laws.

It is first claimed by defendants that the courts will not interfere with the internal affairs of a non-profit corporation where severable property rights are not involved and the trial court therefore erred in finding that plaintiffs' petition stated a claim for relief under the declaratory judgment act. Section 527.010 of that act provides: "The circuit courts and courts of common pleas of this state, within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. * * *." Defendants cite and rely upon four cases in support of their contention that the court will not interfere where no property rights are involved. The first is State ex rel. Hyde v. Jackson County Medical Society, Mo., 295 Mo. 144, 243 S.W. 341 (1922). There the appellant sought relief by way of mandamus to compel the medical society to rescind its action in expelling him from membership. Among other grounds for denial of relief the court did say that relator did not have "that severable, proprietary interest in the respondent society which is a necessary requisite to his right

to relief." (Loc. cit. 243 S.W. 343 [5].) Other and subsequent cases for this rule are: State ex rel. Buckner v. Landwehr, Mo.App., 261 S.W. 699, 701 (1924); Hall v. Morrin, Mo.App., 293 S.W. 435, 441 (1927); and State ex rel. Baumhoff v. Taxpayer's League of St. Louis County, Mo.App., 87 S.W.2d 207, 208 (decided November 5, 1935). The latter case involved also mandamus in connection with the re-instatement of relator as a member of the society after it adopted a resolution that no new members should be enrolled until elected by the executive committee. The Baumhoff case was apparently decided shortly after the effective date of Missouri's Declaratory Judgment Act (Laws 1935, p. 218, Sec. 1 et seq.), and clearly the action was not brought under that act to determine relator's right to membership. That case, and the three others (all decided before the enactment of Chapter 527) cited by defendants are not persuasive of the effect of the Act upon a determination of which group of officers and directors are entitled to control the nonprofit corporation. It has been said that the Declaratory Judgment Act is to be liberally construed, Stewart v. Shelton, Mo., 356 Mo. 258, 201 S.W.2d 395, 398 (1947), and relief under the Act is sui generis ("Lat. Of its own kind or class; i. e., the *only one* of its own kind; peculiar." Black's Law Dictionary, Rev. 4th Ed., p. 1602), McDown v. Wilson, Mo.App., 426 S.W.2d 112 (1968). The wide scope of the relief afforded by declaratory judgment in its modern application is demonstrated by Borchard, Declaratory Judgments, 2nd Ed., p. 490, as to its possible use in cases of exclusion or ejection of persons as members of organizations, and p. 682 "Factional disputes between groups of directors and others interested in the corporation or association are most conveniently determined by declaration." While, without doubt, quo warranto would be available to test the validity of defendant's office (See Section 355.490, RSMo., 1969, V.A.M.S.), that remedy is by no means exclusive. It is merely alternative to the relief by way of declaratory

judgment. Borchard, Declaratory Judgments, 2nd Ed., pp. 316, 317. The court did not err in holding that plaintiffs' petition stated a claim to relief.

■ By Point III, defendants claim that the court erred in holding that the annual meeting conducted by defendants (held at the Patee House) was invalid. As noted, the notices of the annual meeting specified that it be held at the Y.W.C.A. at 2:30 p. m. on December 6, 1970. "There is a duty to proceed with a stockholders' meeting at the place specified in the notice." 19 Am. Jur.2nd Corporations, Section 602, p. 124. The By-Laws here (Section 10) provide, "An annual meeting of the members shall be held on the regular meeting day in December of each year at a time and place set by the Board of Directors. * * *." In Commonwealth ex rel. Sheip, et al. v. Vandegrift, 232 Pa. 53, 81 A. 153, after the annual meeting was called to order with 846 more shares being represented than was required to constitute a quorum, a contending faction representing 992 shares withdrew and refused to participate in an election of a board of directors, for the purpose of breaking a quorum. The court said, loc. cit. 81 A. 155 [4], "Stockholders who attend a meeting, and then without cause voluntarily withdraw, are in no better position than those who voluntarily absent themselves in the first instance" and loc. cit. 81 A. 156 [5], "In this connection, it is worthy of comment that the duty of holding an annual election is imposed by statute, and the time and place for holding it are fixed by the by-laws. The duty as to the time and place of holding the election is quite as imperative as the provision relating to the amount of stock necessary to constitute a quorum. It was not only the privilege of appellants to participate in the annual election of directors, but it was a duty imposed by law upon them. They should have remained in the meeting to exercise their privileges and perform their duties. When they did not do so, but without sufficient cause withdrew, they are not in position to complain about the acts of

those who remained and performed their duties in a regular and lawful manner."

■ There was some conflict in the evidence as to whether there were disturbances just prior to the time when the meeting was to be called to order, but there was a sufficiency of evidence for the court to find, as it did, that defendants were not prevented from holding an annual meeting by the plaintiffs, or anyone else. Mr. Larry Foutch was the President of the association, and he acknowledged that he did not call the meeting to order. Under the facts, there was no sufficient basis to apply the emergency adjournment provisions of Robert's Rules of Order, Section 58, p. 237, "In case of fire, riot, or very serious disorder, or other great emergency, the chair has the right and the duty to declare the assembly adjourned to some other time (and place if necessary), if it is impracticable to take a vote, or in his opinion, dangerous to delay for a vote." Under the rules of the Vandegrift case, supra, defendants are in a position of voluntarily absenting themselves from a duly called annual meeting, and any purported corporate acts undertaken by them thereafter are a nullity, as the court found.

■ By four subpoints, defendants contend that the court erred in holding that plaintiffs' meeting (at the Y.W.C.A. as called) was valid. The first subpoint sets forth that numerous ineligible members and non-members were present and participated in illegal actions. The By-Laws provide that Sustaining, Regular and Life members shall each have one vote. Regular members' dues are a minimum of $5.00, and Section 7 provides that memberships sold before September 1, of any year, shall be applied to the balance of the current year, and those sold after September 1 apply to the balance of the current year and the full following year. What happened with respect to recordation of paid members is that there was no duly elected treasurer in existence from October 19 to December 6, 1970, so the membership lists could not be extended to include those who had paid dues in the interim. Members who had sold memberships merely turned in their monies to Mrs. Lloyd Barnett who was membership chairman. She did, however, have a list of some 95 persons who had paid their dues by September 27, 1970. The court found, as supported by the evidence, that some 27 unrecorded members had purchased memberships prior to the annual meeting, and thus there were on that date 122 members. Defendants had, prior to the annual meeting, attempted to "freeze" membership sales, apparently for the purpose of ascertaining who members were. The court quite properly found that the "freeze" was not authorized by the By-Laws without amendment thereto, and that the failure of the seller of the membership to turn over the money to the proper person would not deprive the person of their membership rights. It is not contended by defendants that these funds were placed absolutely beyond the reach of the association by those who sold memberships, and the contention that the monies were not available for current expenditures, and that those who had paid dues to Mrs. Barnett (and others) were not members, must fail.

■ The By-Laws provide that 10% of the voting members shall constitute a quorum at any membership meeting. As reflected in the list of remaining members after defendants departed, and as found by the court, 42 persons remained at the Y.W.C.A. This clearly constituted a quorum for that annual meeting.

■ Since Mr. Larry Foutch, the President, had departed (without calling the meeting together), Mr. Glenn Setzer called the meeting to order. Defendants claim that because he was not an officer, (although he was a director) and had been suspended from membership, he had not the power to call the meeting to order or to conduct the meeting, and the proceedings were therefore invalid. Section 58, p. 240, of Robert's Rules of Order, provides

that when the regular chairman is absent from a future meeting, the secretary, or in his absence, some other member, should call the meeting to order. As reflected by the minutes, Mr. Setzer did call the meeting to order, "Since the officers were gone", and thereafter, Mr. Lewis Ellis was unanimously elected President Pro Tem. It is therefore apparent that no infirmity existed in the conduct of plaintiffs' meeting by reason of the call to order by Mr. Setzer. Quite apparent also is the fact that Mr. Setzer did not chair the meeting. Remaining, then, is the contention that Mr. Setzer had been suspended from membership, and the ruling on this contention may easily apply to the further contentions that Mr. Carl Goatcher and Mr. Gary Chilcote were not authorized to participate as members and could not be elected as directors or officers because of purportedly being expelled from membership.

Apparently as the result of dissension and disagreement within the organization, a motion was made at both the Board of Directors and the membership meetings of September 6, 1970, that the President, Mr. Foutch, name an Investigative and Discipline Committee "to investigate the conduct and statements of individual members and/or officers against the organization and its policies. This committee is to have full power to investigate the conduct and statements or actions that could be detrimental to the organization as presented by its Constitution and by laws and its overall general purpose, with full rights to suspend or expel persons or groups acting in a manner destructive to the association in accordance with the by laws and Robert's Rules of Order." The motions were carried and Mr. Foutch named the requested committee: Martin McNally, Lee Starnes, Larry Foutch, Mrs. M. L. Thompson and Mrs. A. A. Karl. There is no provision in the By-Laws covering either suspension or expulsion of members.

The committee voted on September 9, 1970, to notify Mr. Goatcher to appear on September 12, 1970, to show cause why he should not be removed from membership. A notice was mailed by certified mail to Mr. Goatcher, but the letter was returned marked "Refused". Mr. Goatcher testified in this trial that he did not receive the notice of hearing from the Investigative and Disciplinary Committee, and the defendants produced no evidence that it was Mr. Goatcher who refused the letter. At any rate, by reason of his default of appearance the committee declared Mr. Goatcher's membership forfeited at its meeting on September 17, 1970.

It is not clear from the rather disconnected, incomplete and incoherent records of the meetings of the Investigative and Disciplinary Committee whether a motion was made and carried that Mr. Gary Chilcote be summoned before the committee to show cause why he should not be removed from the rolls of membership. At any rate, he was notified to appear on October 26, 1970, at 8:15 p. m., and he acknowledged the letter and requested an alternative time of Sunday afternoon, October 25, because he was working on the night of October 26, as a newspaper reporter. The alternative date was not accepted by the committee, which then on October 26, voted unanimously to bar Mr. Chilcote from membership in the association.

Robert's Rules of Order were not followed as to the procedure and hearings concerning the expulsion of Mr. Goatcher and Mr. Chilcote. By Article 75, page 302 of those rules, it is certainly contemplated that the Investigative and Disciplinary Committee make a report to the Society of its investigation, together with recommendations and usually resolutions covering the case. It is then contemplated that the member be cited *before the society* for trial, and may then cross-examine witnesses, introduce witnesses and make an explanation. The rules then provide that no member should be expelled by less than two-thirds vote, which should be by ballot or by general consent. "The members of the committee preferring the charges vote

the same as other members." It is clear that neither Mr. Goatcher nor Mr. Chilcote were ever afforded an opportunity to appear before the membership and answer the charges—rather the proceedings were conducted in the "star chamber" of the Investigative and Disciplinary Committee. But aside from having the opportunity to have notice, appear and defend, the minutes of the regularly called meeting at the Y.W.C.A. of December 6, 1970, at which plaintiffs were present, and which has above been held to have been valid, show that by a motion made, seconded and passed, both Mr. Goatcher and Mr. Chilcote were reinstated as members in good standing (as were twelve persons who had been posted by Mr. Lee Starnes as having been suspended). Consequently, any infirmities in the acts of the association, if so, were cured, and there is no merit in the contentions that "expelled and suspended" members were not entitled to participate in the acts of the association, or that they had failed to exhaust remedies for reinstatement within the association.

 At the meeting of December 6, 1970, at the Y.W.C.A., the members present voted to remove all elected officers and the Board of Directors from office. As to removal of the Board of Directors, the court correctly held the vote to be a nullity for the reason that the terms of office of some of them had not expired, the terms being staggered. The By-Laws, Section 1, Article II, as amended, provided that there should be twelve directors, four to be elected each year for three year terms. Five officers elected by the membership, Mary Chilcote, Treasurer; Delia Lamb, Corresponding Secretary; Mary Maxwell, Recording Secretary; Carl Goatcher, Parliamentarian; and Mrs. Fred Carr, Historian, were by the By-Laws ex-officio members of the Board of Directors. There were existing vacancies on December 6, 1970, only for directors' positions for three-year terms, and the members present did specifically fill those vacancies by electing Lewis Ellis, Francis Ross,

Katherine Koch and Frank Popplewell. The members went on to elect eight more persons to directorships expiring in two years and in one year, respectively, for four named directors for each of the staggered terms. But as noted, these eight persons filled unexpired terms of existing and improperly removed directors (as found by the court). The court properly concluded that the existing directors after the December 6, 1970 meeting included the four elected for the three year terms, above, and those who had been in office and whose terms expired with the annual meetings for 1972 and 1971, respectively: Clara Stuber, M. J. McNally, Mrs. Larry Foutch; and D. V. Frame, Vern Coder and Gilbert Pickett.

 There is no merit in the contention that certain persons could not be elected directors because they were not members of the association. Section 355.-130, RSMo.1969, V.A.M.S., provides that directors need not be members of the corporation unless its articles or by-laws so require. Neither the articles nor the by-laws here make such a requirement either expressly or impliedly. With the five ex-officio officer members of the Board of Directors, together two other qualified directors, there was present more than the one-third quorum required by the By-Laws, and thus it is of no consequence that the hold-over directors were not present at the directors' meeting. Also, it is of no consequence that those absent hold-over directors did not actually know that a directors' meeting was being held, or was to be held, because the By-Laws provide that this meeting shall be held immediately or directly following the annual meeting of the members (above held to be a valid meeting).

 At the December 6, 1970, directors' meeting, Mr. Frank Popplewell was elected President. Shortly thereafter he resigned, and a *special* board meeting was held at which Mr. C. H. Potter was elected President. The minutes of that meeting do not reflect whether notice thereof was giv-

en to all board members (including hold-over directors) as required by the By-Laws. It may be, then, that the acceptance of Mr. Popplewell's resignation and the election of Mr. Potter as President were void for lack of such notice, and the case should be remanded to ascertain that fact. In any event, the election of directors and officers should not wholly fail by reason of Mr. Popplewell's resignation inasmuch as the First Vice President may under the By-Laws act in his place.

That part of the judgment finding that Mr. C. H. Potter was elected as President for 1971 is reversed and the same is remanded for further hearing as to the sufficiency of the notice of the Board of Directors' meeting of January 13, 1971. In all other respects, the findings, conclusions and judgment of the trial court are not clearly erroneous, and all other parts of the judgment are therefore affirmed.

All concur.

## ON MOTION FOR REHEARING

## PER CURIAM.

In their petition for rehearing, appellants are correct in stating that the opinion does not treat of the fact that only ten directors were elected at the respondents' shareholders' meeting of December 6, 1970, when the by-laws, as amended, provide that twelve directors shall be elected. The trial court did, however, cover the matter in its finding by observing that the by-laws provide that officers, who are not directors, are members of the board of directors, which could make a board of the maximum size of seventeen. The court concluded that Francis Ross and Katherine Koch held unexpired terms, making a board of fifteen persons. Because Lewis Ellis and Francis Ross were present along with the five officers as ex-officio members of the Board of Directors, there was a quorum present of more than one-third. The shareholders' actions, in the opinion held to be valid, should not be held to be a nullity because of failure to elect the full

number. Those duly elected, and the hold-over members, along with the officers may continue to conduct the association's business and functions, and the matter may be corrected by a future annual shareholders' meeting (if in the interim years corrective action has not been taken). "An election of a less number of directors than the number which the meeting was called to elect is valid as to those actually elected.", 2 Fletcher, Cyclopedia Corporations, Sec. 291, p. 77; State v. Du Brul, 100 Ohio St. 272, 126 N.E. 87, 90; In re Excelsior Insurance Company, (N.Y.) 38 Barb. 297, 300, "As before suggested, an omission to elect the full number will not vitiate the election of the residue"; In the Matter of Union Ins. Co. (N.Y.), 22 Wend 591; 19 Am.Jur.2d, Corporations, Sec. 1083, p. 531; 19 C.J.S., Corporations, Sec. 716, p. 34; Schmidt v. Mitchell, 101 Ky. 570, 41 S.W. 929, 933; and Wright v. Commonwealth, 109 Pa. 560, 1 A. 794, 796. In this and all other respects, the petition for rehearing is overruled.