Argued June 6, affirmed September 26, 1951

# KANEKO *v.* JONES AND LABISH CELERY GROWERS COOPERATIVE ASSOCIATION

235 P. 2d 768

*B. G. Skulason,* of Portland, argued the cause for appellant. With him on the brief was C. W. Powers, of Portland.

*Bruce Spaulding,* of Portland, argued the cause and filed a brief for respondents.

Before Brand, Chief Justice, and Hay, Lusk, Latourette and Warner, Justices.

LATOURETTE, J.

This is a proceeding in the nature of a stockholder's suit brought by plaintiff, Hiroshi Kaneko, allegedly a member of the Labish Celery Growers Cooperative Association, for the benefit of the association to compel defendant Jones to return to the association $30,000, which, it is alleged, was unlawfully, wrongfully and without consideration paid to Jones by the association, and, further, to compel the association to make an accounting of such sum to plaintiff and other association members.

Defendants by their answer deny that plaintiff is a member of the association, although they admit that at one time he was such a member, and they particularly deny that the $30,000 received by Jones was paid to him without consideration.

We will now proceed to the determination of the status of plaintiff in relation to the association, and, if it be found that he has ceased to be a member of such association, it is axiomatic that, this being a derivative suit, he has no standing as a plaintiff in the instant case.

The above association was organized as a nonprofit cooperative association under and by virtue of §§ 77-501 et seq., O.C.L.A. Articles of incorporation were entered into between five persons of Japanese ancestry on March 7, 1930. The main purpose of such association was to market the products of its members. The defendant Jones owned approximately 200 acres of rich celery land in what is known as the Lake Labish community near Brooks, and entered into leases with some 25 Japanese for various parcels of land. On the 4th day of December, 1937, Jones executed a lease to the plaintiff covering 8.87 acres of land for a term of 10 years, the rental to be payable annually in five installments which aggregated approximately $100 per acre per year. It was stipulated in the lease that plaintiff should maintain a residence upon the premises at all times during the term of the lease.

Each of the various lessees under Jones signed a marketing agreement with the association, such marketing agreement being provided for in § 77-501, supra, and in the bylaws of the association, by which agreement the tenant agreed to sell and deliver to the association all the celery produced by the grower during the life of the agreement. The association by the agreement agreed to resell the celery and pay over to each grower all of the net proceeds of each pool in which he had celery, after deducting all necessary expenses and two per cent for a reserve. By the terms of the above section, any grower signing a marketing agreement thereby became a member of the association.

The United States entered World War II in December, 1941. Shortly thereafter the various Japanese, including plaintiff, an American citizen by birth, were apprehensive of being evacuated from the premises in

question, and on April 20, 1942, plaintiff and the other Japanese, with the consent of Jones, individually executed powers of attorney designating the association as their attorney to care for the growing crops on their leased farms and to sell and dispose of the products therefrom as such association deemed fit for the year 1942, paying to itself one-half of the net profit realized from the operations during said period. It was understood that such powers of attorney would not become effective unless and until the Japanese were evacuated from the premises. No provision was made for growing or disposing of crops for subsequent years, although plaintiff's lease with Jones ran until December, 1947.

In May, 1942, the United States government evacuated said Japanese, including plaintiff, whereupon the association, through Jones, the only remaining member of the association and its manager, marketed the crops for the year 1942, and made a net profit of $172,518.34. One-half of this amount was paid over to the evacuees during the month of February, 1943, including the sum of $11,346.64 paid to plaintiff, at which time a full accounting of the association's operations under the powers of attorney was rendered. The other half remained with the association which paid one-half of the sum retained by it to the various white workers as a bonus for the work they had done in tending and harvesting the crops, Jones, however, receiving nothing for the additional work he had done in carrying out the powers of attorney.

After the evacuation Jones acquired new tenants; new marketing agreements were entered into, and new members, as well as new officers of the association, came into being.

From the above sum retained by the association, by resolution of the board of directors at a meeting on June 13, 1946, $30,000 was allotted to defendant Jones "in lieu of rents" not being increased to members of the association.

After his evacuation in 1942, plaintiff never returned to Lake Labish, nor did he fulfill the terms of the unexpired Jones lease, although he was released by the government in August, 1945, nor did he make claim for an accounting until shortly before suit in April, 1948, albeit he had full knowledge for over five years of the amount of money which the association had retained.

Notwithstanding the fact that an issue was made by the pleadings as to plaintiff's membership status in the association at the time he brought suit, plaintiff did not make mention of such issue during the course of the trial or in his brief. On the other hand, defendants in their brief argued the lack of plaintiff's membership status, which was not refuted by plaintiff since he failed to file a reply brief. We are, therefore, left somewhat in the dark concerning plaintiff's position on this all-important matter.

Our problem becomes more difficult because plaintiff submitted no evidence at the trial, except documentary evidence in the forms of the articles of incorporation, the bylaws of the association, the lease between Jones and himself, the tabulation of accounts in relation to the power of attorney, and excerpts from the minutes of the meetings of the association in relation to the payment of the $30,000 to Jones. Plaintiff called no witnesses in his behalf, and, upon taking the witness stand himself, testified merely to the fact of his being an American citizen by birth.

Membership in the association is predicated on the hypothesis that to become a member one must be a producer and have a marketing agreement with the association. The marketing agreement in a nonprofit cooperative association organized for the purpose of handling the products of its members appears to be the heart of the association from which it receives its vitality. Provision is made for it in cooperative law, and the bylaws of the association sanction it. Without it, the association would be powerless to carry on its functions. Consequently, since by signing the marketing agreement a producer becomes a member of the association, it follows as certainly "as the night the day", that when a marketing agreement ceases to exist between a member of the association and the association, membership therein likewise ceases to exist. This conclusion is fortified by the language of the marketing agreement which reads, "The termination of this agreement as above provided shall also terminate the membership relation between the grower and the association if no other marketing agreement is executed between the parties before this agreement is terminated."

■ When plaintiff executed the power of attorney to the association covering the 1942 crop year, it is clear that the parties intended a substitution of the power of attorney for the marketing agreement. The exigencies of the occasion demanded an expedient; the Japanese were about to be evacuated, leaving behind a growing crop, and if they were to save anything out of the situation, it was necessary that provision be made to nurture and harvest the crop so that it could be marketed. The marketing agreement merely dealt with the disposition of the crop while the power of attorney went further and covered the growing and

harvesting of the crop, yielding to the grower one-half of the net proceeds instead of all the net returns as provided for in the marketing agreement. In order to take care of the emergency, a novation in effect was executed. Since no provision was made for growing or marketing crops for the years subsequent to 1942, no contractual relationship continued to exist between the evacuees and the association. Therefore, plaintiff's membership in the association was concluded.

It might be urged that plaintiff did not lose his membership in the association because the board of directors did not pass a resolution of expulsion pursuant to the bylaws of the association. It is apparent from reading the bylaw in question that the expulsion referred to applies only where a member is guilty of a breach of his obligations to the association while actively engaged as a grower, but has no application to the situation which we have presented in the case at bar.

Defendants urge that plaintiff abandoned his membership in the association. The term "cooperative" in the act under discussion obviously means the united effort of the association members in the growing and marketing of their crops. Members are entitled to no dividends other than those issuing from the crops which they produce and sell through the association. Section 77-501, supra, reads in part:

"* * * Associations organized hereunder shall be deemed 'nonprofit', inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, *but only for their producers.*" (Italics ours.)

The word "abandonment" in legal phraseology generally means the relinquishment of rights in real

or personal property, but we can see no reason why abandonment should not also apply to the relinquishment of membership in a cooperative association as the principle involved is the same. In dealing with this matter, we must consider that the cooperative association in the instant case is not a stock company nor was it organized for profit for itself nor for its members, but only for its producers.

■ When plaintiff was evacuated, he ceased to become a producer and since he became disassociated from all of the activities of the association after 1942, did not return after his release in 1945 and failed to cooperate with the association according to its spirit and purpose, we are of the further opinion that plaintiff clearly, unequivocally and decisively voluntarily relinquished and abandoned his membership in the association. See *McIver v. Norman,* 187 Or. 516, 213 P. 2d 144.

Plaintiff submits *Hood River Orchard Co. v. Stone,* 97 Or. 158, 191 P. 662, as authority for his recovery in the instant suit. That case is distinguishable from our case in that plaintiff there was not suing in a representative capacity, but in his own behalf, for an accounting of moneys claimed owing him under the terms of a marketing contract which had been fully executed prior to his severance of membership from the association. See *Baillie v. Columbia Gold Mining Co.,* 86 Or. 1, 166 P. 965, 167 P. 1167; *Ostlind v. Ostlind Valve, Inc.,* 178 Or. 161, 165 P. 2d 779.

Affirmed.