OWYHEE GRAZING ASSOCIATION, INC., Plaintiff-Appellee,

v.

William O. FIELD, Oscar Field, Terry Field, Newton Wright, Roy Draper, Chet Stahn, Butch Glenski, Keith Johnson, Sherman Nesbitt, Frank Pike, Mrs. Frank (Darcell) Pike, and all others, individuals, purporting to act as members, shareholders, officers or directors of the Owyhee Grazing Association, Inc., Defendants-Appellees,

and

Gerald Cunningham and Gary Cunningham, Defendants-Appellants.

OWYHEE BRAZING ASSOCIATION, INC., Plaintiff-Appellee,

v.

William O. FIELD, Oscar Field, Terry Field, Gerald Cunningham, Gary Cunningham, Newton Wright, Roy Draper, Chet Stahn, Butch Glenski, Keith Johnson, Sherman Nesbitt, Frank Pike, Mrs. Frank (Darcell) Pike, and all others, individuals, purporting to act as members, shareholders, officers or directors of the Owyhee Grazing Association, Inc., Defendants-Appellees,

and

Elwood Thueson, Gaylord K. Harward and the Owyhee County Office of the Farmers Home Administration, Defendants-Appellants.

OWYHEE GRAZING ASSOCIATION, INC., Plaintiff-Appellees,

v.

William O. FIELD, Oscar Field, and Terry Field, Defendants-Appellants,

and

Newton Wright, Roy Draper, Chet Stahn, Butch Glenski, Keith Johnson, Sherman Nesbitt, Frank Pike, Mrs. Fran (Darcell) Pike, and all others, individuals, purporting to act as members, shareholders, officers or directors of the Owyhee

Grazing Association, Inc., Defendants-Appellees.

Nos. 78–3015, 78–3102 and 78–3639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 3, 1980.

Decided Jan. 26, 1981.

Vernon K. Smith, Boise, Idaho, for Gerald Cunningham.

John C. Hepworth, Buhl, Idaho, argued, for William O. Field, etc.; Iver J. Longeteig, Boise, Idaho, on brief.

James A. Belvis, Asst. U.S. Atty., Boise, Idaho, for Harward.

Before ALARCON and CANBY, Circuit Judges, and HOFFMAN, Senior District Judge.*

CANBY, Circuit Judge.

This case began when John Steiner, on behalf of the Owyhee Grazing Association (OGA) sought a declaratory judgment in Idaho state court to determine the membership of the association. Gerald and Gary Cunningham intervened, claiming a conspiracy to defraud them of their membership rights and challenging the sale of OGA's land because it was accomplished without their approval. The Cunninghams joined the Farmers Home Administration and two of its employees as third–party defendants. The case was removed to federal district court upon petition of one of the FHA employees. Then Shoo–Fly Grazing Association intervened, claiming that it had bought the land from OGA. The district court found that the Cunninghams had abandoned their membership in OGA, and entered judgment against them. The Cunninghams appealed. We affirm.

## THE FACTS

OGA was incorporated in 1966 with eight original members. Its purpose was to provide supplemental grazing land solely for the benefit of OGA members. The association received a $215,000 loan from FHA to purchase the grazing land. The loan was secured by a mortgage on the land itself.

OGA was not successful. It had failed to pay its annual loan installment of $12,000 in 1969. By January 1970, OGA owed FHA $25,000, and the association's membership had dwindled to four. FHA and the four OGA members agreed that if OGA could not sell its land within 60 days, OGA would deed the land to FHA. OGA could not sell the land, and on May 25, 1970, the four remaining members–John and Charles Steiner and Gerald and Gary Cunningham–signed a warranty deed and an offer to convey security to prepare the transfer to FHA. On May 29, Sherman Nesbitt, assistant supervisor of the FHA office in Owyhee County, asked the OGA members to turn over their certificates of stock in the association. Gerald Cunningham turned over his certificate to Nesbitt. Gary Cunningham could not find his certificate, but mailed to Nesbitt a statement relinquishing all of his interest in the certificate and in OGA.

The Steiners refused to turn over their certificates, and John Steiner proceeded to reorganize OGA. As a result of the reorganization, FHA decided not to accept the deed and offer to convey security. From June 1970 until early 1975, the OGA land was occupied by John Steiner and by new members William and Oscar Field and Paul Frederick. In January 1975, these OGA members agreed to sell the land to Shoo–Fly Grazing Association, a corporation formed by Oscar, Terry and William Field. This litigation followed.

The district court made several rulings which the Cunninghams challenge. The court held that: (1) The FHA is not a suable entity, and the individual FHA employees named as defendants were also immune from suit; (2) the Cunninghams had not proved their fraud and conspiracy claims; (3) the Cunninghams in fact had abandoned their membership in OGA, and were estopped from claiming membership in OGA because they waited four years to

---

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

press their claim; and (4) Shoo–Fly Grazing Association owned the land, since the sale had been approved unanimously by the remaining OGA members.

## THE GOVERNMENT DEFENDANTS

■ The district court was correct in dismissing the suit against the FHA and the individual FHA employees. The FHA, an unincorporated department of the federal government, is not a legal entity and may not be sued. *Conyugal Partnership v. Gracia*, 331 F.Supp. 521, 522 (D.P.R. 1971); *Winneshiek Mutual Insurance Association v. Farmers Home Administration*, 233 F.Supp. 691, 692 (N.D. Iowa 1964). *See Blackmar v. Guerre*, 342 U.S. 512, 514–15, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *United States v. Remund*, 330 U.S. 539, 541–42, 67 S.Ct. 891, 892, 91 L.Ed. 1082 (1947). In addition, claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by 28 U.S.C. § 2680(h). *Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974). The Cunninghams' claim of a conspiracy by the FHA employees and others to defraud them of their membership rights clearly falls under that section. Likewise, the individual FHA employees are immune from suit. It is well settled that a federal official cannot be held personally liable in tort for "acts committed within the outer perimeter of his line of duty." *Clifton v. Cox*, 549 F.2d 722, 726 (9th Cir. 1977); *Miller v. DeLaune*, 602 F.2d 198, 200 (9th Cir. 1979).

## THE CUNNINGHAMS' CLAIM

■ The district court held that the Cunninghams had not proved a conspiracy to defraud them of their membership rights in OGA. The court found that in fact they had abandoned their interest in the association. The Cunninghams now argue that a corporate interest may not be abandoned. OGA is incorporated under Title 30 of the Idaho Code. Therefore, Idaho law governs the rights of the shareholders in the association. *In re Terrance Lawn Memorial Gardens*, 256 F.2d 398 (9th Cir. 1968). The Idaho courts have not dealt with the ques-

tion presented here. We must defer to the reading of the state law by a district judge residing in that state and will reverse his decision only if it was clearly wrong. *Transport Indemnity v. Liberty Mutual Insurance Co.*, 620 F.2d 1368, 1370 (9th Cir. 1980); *United States v. County of Humboldt*, 628 F.2d 549, 551 (9th Cir. 1980). We agree with the district court that under the circumstances of this case, the Cunninghams could and did abandon their interest in OGA.

■ The OGA articles of incorporation state that the purpose of OGA is to "engage in the business of providing . . . lands for grazing . . . for the use and benefit of its members and not for the purpose of direct gain to the association itself." This statement of purpose demonstrates that OGA is not a typical stock corporation, even though it is organized under the general corporation law of Idaho. A stock corporation is organized to make a profit for its shareholders. A non–stock or membership corporation, on the other hand, is not organized to make a profit. It is organized to provide its members a particular service under a plan which eliminates any profit motive. *Lambert v. Fisherman's Stock Corporative, Inc.*, 115 N.J.Super. 424, 280 A.2d 193, 197 (1971). We feel that OGA is more properly characterized as a non–stock or membership corporation. *Raulston v. Everett*, 561 S.W.2d 635, 636 (Tex.Civ.App.1978). The difference is critical in determining whether a member of the corporation may withdraw or abandon his interest.

■ Generally, a shareholder may not withdraw from a stock corporation. 18 Am. Jur.2d *Corporations* § 472 at 968 (1965). A membership corporation, however, is treated as an unincorporated association to determine the rights of its members. *Raulston v. Everett*, 561 S.W.2d at 638. Thus, a member may withdraw or resign from a membership corporation. *Arizona Rangers, Inc. v. Bisbee Co.*, 11 Ariz.App. 252, 253, 463 P.2d 836, 837 (1969); *Oklahoma Association of Insurance Agents v. Hudson*, 385 P.2d 453, 455 (Okl.1963); *Flanagan v. Benvie*, 58 N.M. 525, 273 P.2d 381, 385 (1954); *Liggett*

*v. Koivunen*, 227 Minn. 114, 34 N.W.2d 345, 350 (1948); *Haynes v. Annandale Golf Club*, 4 Cal.2d 28, 47 P.2d 470, 471 (1935); *Clearwater Citrus Growers' Association v. Andrews*, 81 Fla. 299, 87 So. 903, 905 (1921). A member may resign from a membership corporation simply by announcing his intention to do so. *Haas v. New York Motor Boat Club*, 70 Misc. 603, 129 N.Y.S. 365, 368 (1911).

The district court found that the Cunninghams had abandoned their interest in the corporation. The Cunninghams argue that a member of OGA may withdraw only according to the procedure set forth in the by–laws. The by–laws provide that a shareholder may withdraw from the association by delivering his written notice of withdrawal, together with his membership certificate, to the OGA secretary–treasurer. This was never done. The court found, however, that the Cunninghams did not need to follow the procedure outlined in the by–laws to withdraw from OGA. The court ruled that "lack of . . . participation by a member for a significant period of time is sufficient to support an abandonment" of an interest in a membership corporation. *Kaneko v. Jones*, 192 Or. 523, 235 P.2d 768, 771 (1951).

This ruling is consistent with Idaho law of abandonment. Abandonment depends upon an intent to abandon, and that intent must be evidenced by a clear, unequivocal, decisive act by the abandoning party. *Perry v. Reynolds*, 63 Idaho 457, 122 P.2d 508, 511 (1942). There is more than enough evidence of acts by the Cunninghams to support the district court's finding that they abandoned their interest in OGA. At the request of FHA, Gerald Cunningham gave up his certificate of membership. Gary Cunningham gave the FHA a written statement relinquishing all rights in his certificate and in the association. These acts alone may not be sufficient evidence of abandonment of their membership interests. A stock certificate is merely evidence of the ownership interest. Idaho Code § 30–101. But from June 1970 until April 18, 1975, when the Cunninghams filed their

answer and counterclaim in this suit, they played no active role in OGA. Gary Cunningham, who had been OGA's secretary, forwarded all of OGA's mail to William Field, the newly appointed secretary. Taken together, these facts, especially the lack of participation, demonstrate a clear intent to abandon membership in the association. *Raulston v. Everett*, 561 S.W.2d at 639; *Kaneko v. Jones*, 235 P.2d at 771.

Once it is decided that the Cunninghams abandoned their interest in OGA, it is obvious that the transfer of OGA's land to the Shoo–Fly Grazing Association was a valid transfer. Idaho Code § 30–145 provides that if a corporation is unable to pay its debts, the board of directors may authorize a transfer of corporate assets. A formal meeting of the board is not required. *Phillips Petroleum Co. v. Rock Creek Mining Co.*, 449 F.2d 664, 667 (9th Cir. 1971). At the time of transfer, OGA was in default on its loan from FHA. The transfer was approved by John Steiner, Paul Frederick, and the Fields, who comprised the entire membership of the association and the entire board of directors. The statutory standards were met, and the transfer to Shoo–Fly was valid.

AFFIRMED.