LOUISA PURDY, etc., Respondent, v. THE BANKERS' LIFE ASSOCIATION OF DES MOINES, IOWA, Appellant.

St. Louis Court of Appeals, April 28, 1903.

1. **Insurance, Life:** BY-LAWS BINDING: NOTICE THEREOF TO MEMBERS PRESUMED. The by-laws of a corporation, duly enacted, and containing no provisions contrary to the charter or the laws of the land, are binding on its members, and presumed to be known to them.

2. ——: POWER OF EXPULSION OR FORFEITURE, A CHARTER POWER. Corporations organized for gain have no power of expulsion or forfeiture unless granted by their charter or by general municipal law, and, if granted, the power extends no further than the language of the grant warrants when strictly construed, and can be exercised for no other causes than those enumerated.

3. ——: ——: CHARTER PROVISIONS, EFFECT OF: NO FORFEITURE ON GROUND OF INTEMPERANCE, WHEN. The charter of an assessment insurance company conferred on the

directors power "to adopt all by-laws necessary for the management and transaction of the business of the association in accordance with the law and articles of incorporation." Section 2 of the charter provided that the guaranty fund contributed by each member, together with the insurance provided in the certificate of membership and by-laws, was to be forfeited on failure of a member to pay his assessments within the time prescribed by such by-laws. The certificate provided that on failure of the member to pay his dues his guaranty deposit should be forfeited, and his membership cease, and that the certificate should become null and void if the member was or should become habitually intemperate in the use of intoxicating liquors. *Held*, that the certificate could not be forfeited by the directors on the ground that the member's habits had become intemperate, though such fact would be a good defense to an action thereon.

4. ———: ———: UNREASONABLE BY-LAW: CONTRACT. A provision that is unreasonable as a by-law may be good as a contract.

5. ———: BY-LAWS NO PART OF THE CONTRACT, WHEN. The application for the insurance contained this provision, that "the above application and this declaration with the certificate issued thereon" should form the basis of the contract between the insured and the association. *Held*, that the by-laws of the association were no part of the contract.

6. ———: ———: ASSESSMENTS TO BE COLLECTED: GUARANTY FUND. The articles of incorporation of an assessment insurance company provided: "The guaranty fund shall consist of deposits pledged by each member for the payment of assessments," etc., and that "the benefit fund shall consist of all moneys collected for the payment of losses occasioned by the death of members of the association, and shall be collected by a pro rata assessment levied by the board of directors on the guaranty fund of the association." *Held*, that assessments were not only to be levied, but collected from the guaranty fund.

7. ———: ILLEGAL FORFEITURE NOT RATIFIED. The mere failure of a member of an assessment insurance company to seek reinstatement after a void expulsion did not operate to ratify the illegal forfeiture of his certificate, particularly where the association sustained no injury by his conduct, but had the money in its hands to discharge any assessments for which he was liable.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper*, Judge.

AFFIRMED.

STATEMENT.

The appellant insurance company is a corporation organized under the laws of the State of Iowa, and does an assessment insurance business in this State.

On October 27, 1894, it issued a certificate of insurance for $2,000 on the life of George A. Purdy, of Pierce City, Missouri, payable to his daughter, Louisa Purdy. Purdy died the first day of June, 1900; proofs of his death were made and furnished the company, which refused to pay the insurance money and this action was brought to compel payment.

The reason stated in the answer for refusing to pay is, that by virtue of the contract made between the deceased and the company (of which the constitution and by-laws of the company are said to be a part, as well as the application for insurance), the certificate or policy issued to Purdy had been legally cancelled two years prior to his death, on account of Purdy becoming intemperate in the use of liquors to an extent liable to impair his constitution and injure his general health.

The answer further states that the order of cancellation was made by the board of directors of the Bankers' Life Association at Des Moines, Iowa, April 17, 1898, after due consideration of testimony bearing on the question of Purdy's intemperate habits and after notice to him of when and where the matter would be heard and to submit such evidence as he saw fit.

Another defense is that Purdy was notified of the cancellation on April 28, 1898, but never took any steps to be reinstated, or signified that he was dissatisfied with the board's action.

The replication, besides denying the averments of the answer, alleges the notice to Purdy of the contemplated inquiry by the board of directors into his habits, was mailed at Des Moines, March 13, 1898, in a registered letter so that no one but Purdy could receive it,

nor could it be forwarded to him if he was absent from home; that the officers of the association then knew Purdy had left home on March 14, for a sojourn with his family in Florida, was still absent and would remain away until the latter part of April; that in fact he did not return to Pierce City until April 22d, when he found the notification awaiting him in the postoffice; that Purdy was postmaster at Pierce City at that time and had left the office in charge of an assistant during his absence. The replication denies the power of the board of directors, under the by-laws of the association, to cancel Purdy's certificate and avers that the by-law attempting to confer such authority was unreasonable and not binding on members. It was further averred that the ground of forfeiture set up by the defendant was so indefinite and uncertain as to the time, place and manner of the inquiry as to constitute an insufficient basis for forfeiture; further, that no evidence of any kind was received by the board in support of the charge; that neither the plaintiff nor her deceased father was called on for an assessment, dues or payments by the association after April 20, 1898, but instead the association induced Purdy to believe no dues or assessments would be thereafter received from him.

The certificate of insurance is of the following tenor:

"Bankers' Life Association, Des Moines, Iowa.

October 27, 1894.

"No. 38125.    $2,000.00.

"This is to certify that in pursuance of the articles of incorporation and by-laws of this association, and in consideration of the statements contained in his application No. 32442, which are hereby made part of this contract, and the sum of eighty-one dollars, George A. Purdy, of Pierce City, State of Missouri, by occupation land agent, age fifty-four years, has been admitted to membership in this association, and that in the event of his death during membership, his beneficiary shall

receive the sum of two thousand dollars for this certificate of membership and the return of that portion of the guaranty fund deposited with the association by the member, amounting to fifty-four dollars.

"Upon the failure of the above-named member to make any payment due from him to the association at its maturity in January, April, July or October, of each year, his guaranty deposit shall be forfeited and his membership shall thereupon cease.

"This certificate to become null and void if death occur from self-destruction within two years from this date, the member being sane or insane, or if the member is or shall become habitually intemperate in the use of intoxicating liquors, chloral, cocaine or opium, and no action shall be brought or sustained upon or under this certificate unless commenced within one year after the day of the death of the member. The amount due under this contract to be provided for by an assessment on the membership levied pro rata upon the guaranty fund of this association, unless otherwise supplied, and to be paid to Louisa A. Purdy, daughter, at the home office of the association upon satisfactory proof of claim to be supplied by the beneficiary. In the event of the death of the beneficiary prior to that of the member,· or in case none is named, the benefit then to be payable to the legal representatives of the deceased member.

"In witness whereof the signature of the president attested by the secretary, with the seal of the association, are hereto affixed on the date above written.

"Attest: A. C. STILSON, Secretary.

"................, President.

"Member's signature: George A. Purdy."

The catechism submitted to and signed by Purdy as part of his application for insurance contains, among other questions and answers, these:

"Do you drink wines, spirits or malt liquors? No.

"Is it a daily habit? No.

"Do you agree that the intemperate use of liquor,

chloral, cocaine, opium or other poisonous drugs shall forfeit your membership? Yes.''

Said application was dated October 24, 1894.

The articles of incorporation of the Bankers' Life Association provide that its business shall be managed by a board of directors; that it shall be conducted on the mutual assessment plan, payment of all assessments to be made by levies on a guaranty fund formed by the contributions of members, at the rate of one dollar for each year of their age when they enter the society, and that a member's contribution to the guaranty fund shall be forfeited on his failure to pay assessments when called for. There is also a surplus fund which is made up of guaranty deposits forfeited to the association by lapsed memberships, and all interest accruing on any of the funds of the association. This surplus fund is set apart to meet emergency losses caused by deaths in excess of one per cent per annum of the membership and for advances to pay death losses when the benefit fund is exhausted. There is also a contingent fund to meet expenses, which consists of a membership fee of fifty per cent of the guaranty deposit of each member.

Purdy was fifty-four years old when he joined the association and had to pay fifty-four dollars as a deposit to the guaranty fund, and one-half of that amount to the contingent fund; eighty-one dollars in all.

The articles provided that the board of directors might adopt all by-laws deemed necessary for the management and transaction of the business of the association in accordance with law and the articles of incorporation.

Certain by-laws material to this controversy are of the following tenor: That certificates of membership may be cancelled by the board of directors in case the applicant misrepresented his health, family history, or other material circumstances, or in case a fraud was perpetrated by him on the association; or if a member becomes intemperate to an extent to impair his consti-

tution or injure his general health.　When information comes to the officers of the association leading to the belief that an inquiry should be made as to the cancellation of a certificate, the president or secretary must cause a notice to be sent to the member whose certificate is questioned, stating briefly the nature of the information or charge and that at any time not less than ten or more than forty days from the date of the notice, the board will proceed to determine whether or not the certificate shall be cancelled.　The member is to be informed that he may submit evidence or appear before the board of directors, by counsel, and show cause why his certificate should not be cancelled.　Said notice, it is provided, must be sent by registered mail, directed to the postoffice address of the member as shown on the books of the association and the receipt of the postmaster at the mailing point for the envelope containing the notice shall be sufficient evidence of the service thereof.　Another by-law provides that on the day fixed for hearing, whether the member attends or not, the board of directors shall proceed to hear and determine the matter on the evidence and information before it, and if it finds the existence of a fact authorizing cancellation, shall cancel the certificate and declare the membership terminated, notice of this action to be sent to the member in the same manner as the notice of the hearing was sent.　It is further provided that cancellation forfeits all the money and notes paid to the association.

The information which led to the cancellation of Purdy's certificate was given to the association by a special agent or examiner sent to Pierce City to look into the company's risks and was contained in the following report:

"Special Report.　　　　　Cert. No. 38125.

"Name, George A. Purdy.

"Address, Pierce City, Mo.　　Occupation, Postmaster.

"Is now in Florida for his health. Could not learn the nature of his trouble, but it is supposed to have been brought on by dissipation. Purdy's domestic relations are not happy and for the last two years he has been drinking heavily; does not get drunk, but is loaded all the time.

"H. B. CATHER, Special Agent.

"Remarks (see other side).

"3, 26, 1899.       (Over.)

"References: L. L. Allen, Pierce City; L. A. Chapman, Pierce City; Al. Newman, Pierce City; Dr. H. V. Worley, Pierce City; and Carl Leonard, Monett."

In addition to that report the company had this letter from a physician of Pierce City:

"Pierce City, Mo., April 2, 1898.

"Mr. Purdy will drink on an average from ten to fifteen drinks of whiskey daily most of the time for past two years. He never gets drunk so as to stagger, but is constantly under the effect so as to often thicken his speech. He has recently drunk excessively so he was confined to the house for several days. At present, I think, he has gone to Florida. He is a good risk with this exception, and it has only been during past two years that he has drunk to excess. I trust this report will be confidential, as Mr. Purdy is a personal friend of mine and an active, energetic man, who stood high as a citizen in this community. I am not his family physician.

"Yours respectfully,

"H. V. WORLEY, M. D."

The notice to Purdy that there would be an inquiry into his habits with a view to cancelling his certificate was this:

"March 31, 1898.

"Geo. A. Purdy, Pierce City, Mo.

"Dear Sir: You are hereby notified that information has reached this office to the effect that you are intemperate in the use of liquors to an extent liable to im-

pair your constitution and injure your general health.

"You are further notified that on the nineteenth day of April, 1898, at ten o'clock a. m., at its office in Des Moines, Iowa, the board of directors of the Bankers' Life Association will proceed to determine whether or not your certificate No. 38125 should be cancelled.

"You may submit such evidence as you see fit with reference to the matter of inquiry, and may appear in person or by counsel before said board at said time and place and show cause, if any you have, why said certificate should not be cancelled.

"Yours truly,

"THE BANKERS' LIFE ASSOCIATION,

"By E. E. CLARK, Second Vice-Prest."

"Registered letter No. 10503, P. O. Des Moines, Iowa.

"Received March 31, 1898, of Bankers' Life Association a (letter parcel) addressed to Geo. A. Purdy, Pierce City, Mo.

".EDW. H. HUNTER, P. M.

"Registry return receipt sent March 31, 1898, from postoffice at Des Moines, Iowa, Reg. letter, addressed to Geo. A. Purdy, postoffice at Pierce City, Mo.

"Received April 25, 1898. Received the above described registered letter. Geo. A. Purdy."

It will be seen from the receipt appended to that letter that Purdy did not get it until April 25th, which was six days after the date of the hearing.

This was the resolution cancelling Purdy's certificate, being an extract from the minutes of a regular meeting of the board of directors of the Bankers' Life Association, held April 19, 1898:

"On motion of Judge Ayres, the following action was taken:

"Be it remembered that Geo. A. Purdy, of Pierce City, Mo., to whom certificate No. 38125 was issued, has been duly served with notice that the board of directors would, on April 19, 1898, at ten o'clock a. m., pro-

ceed to determine whether or not said certificate should be cancelled; and the said Purdy having failed to appear, the board having proceeded to hear the evidence, information and report before it, finds that the said Geo. A. Purdy, is intemperate in the use of liquors to an extent liable to impair his constitution and injure his general health.

"It is therefore determined and ordered that his said certificate be and the same is hereby cancelled and his membership in this association terminated."

The notice sent to him of the action of the board was dated April 20, 1898, and informed him that after due consideration the board, at a meeting held April 19th, found he was intemperate in the use of liquors to an extent liable to impair his constitution and general health and ordered his certificate cancelled and his membership terminated. This notice was received by Purdy also on April 25th.

The evidence tends to show that thereafter Purdy took no steps in regard to his membership, was never notified or called on to pay any dues and assessments and paid none. After his death this action was brought by the beneficiary.

Plaintiff asked no declarations of law, but the defendant asked six, expressing the different phases of the defense, to-wit: that the cancellation of the certificate was effective; that mailing the notice to Purdy was sufficient notification of the hearing; that the reports on which the directory acted were evidence enough to justify its action; that sworn evidence was not required by the by-laws, and that Purdy, by his silence after he was notified of the termination of his membership, acquiesced in the board's action.

These declarations of law were refused by the court, and judgment entered for the plaintiff for the amount of the certificate.

*I. M. Earle* and *Henry Brumback* for appellant.

(1)  If purporting to act in pursuance of such by-laws the proper officers assume to cancel the member's certificate and notify him that such action has been had, he must in some way within a reasonable time manifest to the knowledge of the association, his disaffirmance of such action, or he will be deemed to have acquiesced therein.  Glardan v. Supreme Lodge, 50 Mo. App. 45; Osceola v. Smith, 57 Md. 98-107; Anacosta Tribe v. Murbach, 13 Md. 94; Bachman v. N. Y. etc. Co., 64 How. Pr. 442; McDonald v. Grand Lodge, 53 S. W. 282; Hand v. Supreme Council, 60 N. E. 1112.  (2)  Sworn evidence is not required in proceedings for suspension or cancellation before such board—more like arbitration proceedings,  (Hutchinson v. Lawrence, 67 How. Pr. 47), which do not require sworn evidence unless so specified.  Thornton v. McCormick, 75 Ia. 285, 39 N. W. 502; Livingstine v. Combs, 1 N. J. Law 42; Sandborn v. Paul, 60 Me. 325; Kane v. Fond du Lac, 40 Wis. 495.  (3)  The payment made by Purdy, March 31, 1898, is immaterial because it was the payment of a former assessment for past dues, made before the cancellation proceedings were commenced by mailing the registered letter of that date, and also immaterial under section 5, article 11, by-laws, had it been paid subsequently.  Ellerbe v. Barney, 119 Mo. 632.

*W. Cloud* for respondent.

(1)  "A corporation formed under a general statute, can not assume any larger powers than the statute confers, by merely declaring in its articles of association that it possesses them.  .  .  .  It follows that its charter does not consist of articles alone, but of its articles when read in connection with the enabling statute which enters into and forms a part of its charter."  5 Thompson on Corporations, sec. 5996, and authorities.  (2)  "Unless authority to this end is granted by the

Legislature, a corporation can not establish a by-law and annex thereto the sanction of a forfeiture of the membership of the members who violate it.'' There can be no power to impose forfeitures unless granted by clear legislative enactment. Carroll v. Bank, 8 Mo. App. 253; State Savings Ass'n. v. Printing Co., 25 Mo. App. 648; Cummins v. O'Brien, 13 Mo. App. 197; Thompson on Corporations, sec. 956.

GOODE, J.—The by-laws of a corporation duly enacted and containing no provisions contrary to the charter or the laws of the land are binding on its members and presumed to be known to them. Hill v. Rich Hill Coal Co., 119 Mo. 9; Carr v. St. Louis, 9 Mo. 190; Palmyra v. Morton, 25 Mo. 593; McLellan v. School Board, 15 Mo. App. 362; 1 Thompson, Corporations, 594. Therefore, if the defendant's by-laws regarding the forfeiture of certificates of membership because of the intemperance of the insured are valid, they operated on the certificate in controversy, although the deceased never actually knew of or assented to them. And, as the provision for notice to a member was observed in his case, the result of the hearing before the directors can not be set aside in this collateral proceeding on the ground that Purdy received notice of it after the event, unless the notice was designedly mailed to him when the defendant's officers knew he would not get it in time to appear. The validity of the forfeiture depends rather on defendant's compliance in good faith with the by-laws in attempting to notify Purdy, than on his timely receipt of the notice. Forse v. Supreme Lodge, 41 Mo. App. 106; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Siebert v. Chosen Friends, 23 Mo. App. 272; Weakly v. Aid Ass'n, 19 Ill. App. 329; Union, etc., Ass'n v. Miller, 26 Ill. App. 230; Pitts v. Ins. Co., 66 Conn. 376.

The refusal of certain declarations of law concerning the forfeiture proceedings asked by the defendant,

indicates that the trial court did not determine the cause on a finding that the proceedings were void for fraud. Hence, if the judgment is right, it is because the by-laws on which the proceedings were based are invalid, either from not having been adopted legally or from want of authority in the corporation to adopt them at all, or from their unreasonable and oppressive character.

The defendant's charter confers on the board of directors the power to "to adopt all by-laws deemed necessary for the management and transaction of the business of the association in accordance with the law and articles of incorporation." The charter of a body politic may lodge the authority to enact by-laws, which otherwise belongs to the membership at large, in the directors, and the regulations in question appear to have been regularly adopted by its directors, pursuant to the above clause of the articles of incorporation. State Sav. Ass'n v. Printing Co., 25 Mo. App. 642; Albers v. Merchants' Exch., 39 Mo. App. 583.

Corporations organized for gain have no power of expulsion or forfeiture unless granted by their charter or by general municipal law; that is to say, the power must be derived from the legislative sovereignty of the State. In re Long Island R. R. Co., 19 Wend. 37; Evans v. Phila. Club, 50 Penn. St. 107; Westcot v. Mining Co., 23 Mich. 145; Pulford v. Fire Department, 31 Mich. 458; People v. Cotton Exch., 8 Hun (N. Y.) 216; 1 Thompson, 853; 1 Bacon, Benefit Societies, sec. 99.

The Bankers' Life Association is regarded by counsel for both sides as an assessment life insurance company, and we will treat it as such, although not sure that it is other than a regular, or "old-line" company. At all events, it follows the business of life insurance and issues policies or benefit certificates which vest property rights in insured members. The power to expel persons from such associations and to forfeit their insurance must be derived from a legislative grant, as in

the case of other companies organized for gainful purposes; and if granted, the power extends no further than the language of the grant warrants when strictly construed, and can be exercised for no other causes than those enumerated. Mulroy v. Knights of Honor, 28 Mo. App. 462. This rule is wise and according to principles imbedded in the ancient strata of the law, which has always frowned· on forfeitures as opposed to common right, and only to be pronounced by virtue of specific authority from the lawmaking sovereignty. Pulford v. Fire Dept., supra.

Now the defendant's charter is not silent on the subject, but speaks as follows:

"Sec. 2. The business of this association shall be conducted upon the mutual assessment plan, in which the payment of all assessments shall be secured by a guaranty fund, contributed by each member pro rata according to age at entry; this guaranty fund, together with the insurance provided in the certificate of membership and by-laws of the association, to be forfeited upon failure of a member to pay his assessments within the time prescribed by the by-laws of the association, provided, however, that relief from such forfeiture, and provision for reinstatement of lapsed members, may be made by the board of directors."

· That is the only expression in the charter as to forfeiting a member's certificate. It provides for by-laws fixing the time when assessments must be paid, forfeiture for non-payment and the reinstatement of defaulting members. What the laws of Iowa are on the subject is not proven, and whatever power existed to enact by-laws to annul a member's certificate for intemperance, or any other cause than default in payment of assessments, was contained in the charter. But that instrument rather withheld than conferred the power to pass such by-laws, since the expression of one cause of forfeiture implies the exclusion of others and enactments to take away vested rights must fail unless their

validity is clear. Erdman v. Ins. Co., 44 Wis. 376; Ballou v. Gile, 50 Wis. 416; Schillinger v. Boes, 9 Ky. 18; 1 Thompson, sec. 948; 1 Bacon, sec. 87, 377. A clear source of power to enact the rules in question is not found in the chartered right to adopt all by-laws necessary for the management and transaction of the business of the association; which clause of the charter is separate and unconnected with the one which provides for forfeiture of a member's insurance.

The articles of defendant contemplated no forfeiture of a certificate by the decision of the directors for anything except defaulted payments, and if a member kept his assessments paid, he stood free from risk of losing his insurance save by the judgment of a judicial court. Purdy's certificate enjoyed immunity from forfeiture by the directors on the ground that his habits had become intemperate, but if that was a fact it would be a good defense to this action on the certificate. Indeed, the certificate itself, though it said it might become null and void if the insured grew intemperate, spoke of a forfeiture of membership only in case dues were not paid.

If the directors had possessed authority to enact by-laws on the subject, we would question if those before us are not unreasonable and therefore void. The hearing provided for is superficial and a member may be expelled on nothing resembling evidence or proof— on a letter from some irresponsible party, or on rumor, as Purdy was. As to him the trial was in another State and five hundred miles distant. He had no chance to appear without undergoing much annoyance and expense, and had no recourse by appeal if the decision went against him. Aside from the fact that the directors were interested and may have been prejudiced, a procedure so onerous and oppressive and entailing the loss of valuable property, is repugnant to the essential principles of our law. State ex rel. v. Merchants Exch., 2 Mo. App. 96; Albers v. Merchants Exch.,

supra; 1 Thompson, secs. 1013, 1016, inclusive; also sec. 1023 and cases cited. The franchises with which corporations are endowed, must be exercised with justice and according to those ideas of fairness which pervade general jurisprudence. St. Louis v. Weber, 44 Mo. 547. There is no positive test of the degree of unreasonableness and oppression which will render a corporate statute invalid, nor any rule to go by in passing on the question of its validity, except that its unfairness must be demonstrably clear for a court to set it aside. The defendant's forfeiture by-laws afford opportunity for arbitrary action against a member's rights and for the cancellation of certificates without thorough investigation of the charges on which they are cancelled. It may be well said that so difficult a question as whether a person's habits have grown intemperate enough to endanger his general health, calls for the knowledge of experts and can not be lawfully decided on such a hearing and by such a body as passed on Purdy's case. A charge like that is radically different from one based on defaults in payments, which can be established or disproved with ease.

But a provision that is unreasonable as a by-law, may be good as a contract. Goddard v. Exchange, 79 Mo. 609, 9 Mo. App. 290; Austin v. Searing, 16 N. Y. 112. The defendant contends its by-laws entered into and became a part of the contract between it and Purdy. If this were true the result would not be altered as to any by-law which was *ultra vires*, because it was a nullity. But the contention is unsound. The certificate embraces the statements in Purdy's application as part of the contract, but not the by-laws; and if its language leaves this point ambiguous, the language of the application makes it clear. The last paragraph of the latter instrument is as follows:

"It is hereby expressly agreed that the above application and this declaration with the certificate issued

thereon shall form the basis of the contract between the above named person and the Bankers' Life Association, of Des Moines, Iowa.''

It is thus seen that the certificate and the application made up the agreement between Purdy and the defendant, and that the by-laws were no part of it.

Lastly, it is contended that Purdy's failure to contest the attempted deprivation of his rights, although he lived two years after it happened, is fatal to plaintiff's action. This argument would have force if it was shown assessments were called for while Purdy lived, which he was bound to pay to keep his insurance alive. Hoeffner v. Grand Lodge, 41 Mo. App. 359; Glardon v. Supreme Lodge, 50 Mo. App. 45; Miller v. Grand Lodge, 72 Mo. App. 499; Supreme Lodge v. Wilson, 66 Fed. 789; Karcher v. Knights of Honor, 137 Mass. 368. But instead of Purdy falling in arrears as to his assessments, he had deposited with the association when he joined it, eighty-one dollars; fifty-four dollars for the guaranty and twenty-seven dollars for the contingent fund. Losses were paid from assessments levied on the guaranty fund and whatever part of a member's contribution to that fund remained unused at his death, was payable to his beneficiary in addition to the amount of his certificate. As Purdy had been a member only six years when he died, some of what he had deposited to pay for his insurance may have been unearned, and if so, the defendant attempted to forfeit that too.

Defendant's counsel say that the guaranty fund is not used for the payment of assessments, but only as the basis on which to compute their amount, citing Mee v. Bankers' Life Ass'n of Minnesota, 72 N. W. 74. That case is quite different from the one at bar; for it appears therein that mortuary benefits were provided for by the by-laws to be collected by assessments from the members, and that the so-called guaranty fund was simply a pledge for the payment of the assessments. The forfeiture was upheld in that case because the in-

sured had failed to pay an assessment when called for in accordance with the by-laws.

No oral proof was made in this case concerning the practice in the collection of assessments to pay benefits, and we can only know about the mode in which benefits were paid from the articles and the by-laws. Contrary to the assertion of defendant's counsel, the articles of incorporation state that the guaranty fund is to pay assessments: "The guaranty fund shall consist of deposits pledged by each member of the association *for the payment of assessments* and the said deposit required of each member shall consist of the sum of one dollar for each year of age of the member at the date of the application." Another section reads: "The benefit fund [namely, the one used to pay benefits] shall consist of all moneys collected for the payment of losses occasioned by the death of members of the association and shall be *collected* by a pro rata assessment, levied by the board of directors on the guaranty fund of the association." Those sections of the articles negative the idea that the only purpose of the guaranty fund is to afford a basis for calculating the assessments to be paid by the different members, or to make sure the payment of the assessments. The inevitable interpretation of the provisions is that assessments are not only levied, but collected from the guaranty fund; and any assessment must be passed and not collected, if there is money enough to pay mortuary benefits on hand (By-Laws, art. 5, sec. 1).

Giving the articles and by-laws the only interpretation their language will permit, it is clear that Purdy may have had funds on deposit with the defendant to pay any dues assessed against him, and this case is, in that respect, unlike Glardon v. Supreme Lodge, and is like the Hoeffner case, supra, in which it was ruled that if an expulsion is void, a member need not seek reinstatement; and that as the evidence showed all dues from Hoeffner (plaintiff's deceased husband) to the

grand lodge from the date of the alleged expulsion to his death had been tendered, the plaintiff's rights were not impaired by failure to pay assessments.

Acquiescence is a branch of the law of estoppel and is used to defeat a party's action on the principle of equitable estoppel; that is, it must appear that, because of something that was done, or because nothing was done, the party invoking the estoppel will sustain loss unless it is allowed. Mere silence or inaction, short of the limitation period, will not bar relief. Smith v. Roach, 59 Mo. App. 115; Spurlock v. Sproule, 72 Mo. 503; St. Louis Safe Deposit & Banking Co. v. Kennett Estate, 101 Mo. App. 370. Such is the general theory of this doctrine and we apprehend it is also the theory on which it is applied to cases like the present. Bostwick v. Fire Department, 49 Mich. 513; Palmetto Lodge v. Hubbell, 2 Strob. L. (S. C.) 457; 1 Thompson, sec. 931.

So far as appears, the defendant was not prejudiced by Purdy's failure to seek reinstatement. Indeed, he could not seek it in the mode usually provided; that is, by an appeal to some other tribunal of the order; but if he took any action was bound to proceed in a judicial court and in a foreign jurisdiction. It would be unjust to decide that because he remained inactive under such embarrassments, he ratified the illegal forfeiture of his certificate; particularly as the association sustained no injury by his conduct, but had the money in its hands to discharge any assessments for which he was liable.

The judgment of the circuit court was for the right party and is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.