Jake NANIA, Plaintiff/Appellant,

v.

SUNSET COUNTRY CLUB, et al., Defendants/Respondents.

No. 63126.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 15, 1994.

Paul Simon Jr., Evelyn Mehler, St. Louis, for plaintiff-appellant.

Allen Spencer Boston, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Judge.

Jake Nania appeals from summary judgment entered in favor of Sunset Country Club (Sunset), a Missouri corporation, and its board of directors.[1]

In 1989 Nania was a shareholder in Sunset. During that year Sunset's Board of Directors began to formulate a plan to renovate Sunset's golf course and club house. Nania was dissatisfied with the board's plan so he and several other shareholders attempted to devise an alternative renovation plan. On May 4, 1989, the board held a special shareholders meeting to discuss the renovation. Several shareholders tried to discuss the alternate plan but were ruled out of order. Shortly after this incident, shareholder Bud Conklin, acting pursuant to a Sunset by-law, petitioned Sunset President Ken Schaefer to call another special meeting to allow shareholders to consider the alternate plan. Schaefer refused to call such a meeting. However, the board did allow Nania to present the alternate plan to a joint meeting of the full board of directors and Sunset's House Committee. They rejected the plan unanimously.

Since Schaefer still refused to call a special meeting of shareholders to review the alternate plan, Nania, along with eight other shareholders, filed a petition in the Circuit Court of St. Louis County seeking a writ of mandamus to compel Schaefer to call the meeting. The court denied the writ.

Schaefer then suspended all nine shareholders who had petitioned the court. He submitted charges against Nania to Sunset's House Committee. Nania appeared before the committee, and its members voted to expel Nania. Thereafter, the board met to vote on the committee's recommendation that Nania be expelled. Nania was expelled by a vote of ten to two by the members of the

---

**1.** Sunset moved to have the record on appeal stricken and the appeal dismissed for violation of Rule 81.12. As a matter of discretion, we will undertake a review on the merits where the disposition is not hampered by the rule violation. *Williams v. MFA Mut. Ins. Co.,* 660 S.W.2d 437, 439 (Mo.App.1983). Motion denied.

board. The other eight shareholders who had filed the petition were reinstated.

Nania filed a petition in the Circuit Court of St. Louis County against Sunset and the individual members of the board of directors. All the defendants moved for summary judgment, and the trial court granted their motion. Nania appeals arguing that Sunset did not have the authority to expel him.

In reviewing a grant of summary judgment in favor of a defendant, we view the record in the light most favorable to the plaintiff and accord the plaintiff all reasonable inferences that may be drawn from the evidence. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo.banc 1993). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 489.

In the present case, Sunset had enacted a by-law which dealt specifically with the procedures to expel shareholders. The by-law provided the president with the power to suspend members for conduct "prejudicial to the good order, peace, or interest of the Club." It also empowered Sunset's House Committee to hear such charges and recommend a course of action to the board of directors. The board of directors could expel a shareholder if ten directors voted to do so. When Nania was expelled, each procedure was followed in accordance with this by-law. Nania was given notice of the charges against him and an opportunity to defend those charges. It is not disputed that Nania, as a condition of the acceptance of his application for membership, agreed in writing to conform to the by-laws and rules of Sunset. Nevertheless, he now argues that the provisions of the by-laws pertaining to expulsion from Sunset are unenforceable.

In *Purdy v. Banker's Life Association of Des Moines*, 101 Mo.App. 91, 74 S.W. 486 (1903), an Iowa corporation refused to pay an insured's beneficiary maintaining that the insured's certificate of membership in the corporation had been forfeited in accordance with a corporate by-law. The corporate by-law provided for the board of directors to cancel the certificate of any member who drank alcohol so excessively that it impaired his health. *Purdy*, 74 S.W. at 490. The appellate court held the by-law invalid and stated:

> Corporations *organized for gain* have no power of expulsion or forfeiture unless granted by their charter or by general municipal law; that is to say, the power must be derived from the legislative sovereignty of the state ...; and, if granted, the power extends no further than the language of the grant warrants when strictly construed, and can be exercised for no other causes than those enumerated.

*Id.* at 490 (emphasis added).

■ There is no question that Sunset's charter does not include any provision for the expulsion of shareholders. Sunset was originally organized as a corporation pursuant to §§ 4933 et seq. RSMo.1929, the predecessor statutes of today's General and Business Corporation Law, Chapter 351 RSMo.1986. Therefore, Nania argues, Sunset must be deemed to be a corporation "organized for gain" and subject to the rule laid down in *Purdy*. It is true that § 4940 RSMo.1929 included, among other enumerated purposes for which incorporation was authorized, "any other purpose intended for pecuniary profit or gain not otherwise especially provided for...." However, we find Nania's argument—that Sunset's organization and continued existence pursuant to these statutes is conclusive proof that the purpose of its existence is the realization of profit—to be an oversimplification.

In *Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694 (9th Cir.1981), the Ninth Circuit dealt with a somewhat analogous situation. At issue in *Owyhee* was the right of a member of a corporation to withdraw from the corporation. Generally, withdrawal and expulsion are similar issues in that both rights depend on the nature of the corporation. A shareholder cannot withdraw from a corporation which has as its purpose the realization of profit. *Owyhee* at 697. Members generally may withdraw or resign from membership corporations. *Owyhee* at 697. The Ow-

yhee Grazing Association was organized under the general corporation law of Idaho; yet, the Ninth Circuit chose to treat Owyhee as a membership corporation. *Id.* In doing so, the court relied on the statement of purpose in Owyhee's articles of incorporation. The articles of incorporation stated that Owyhee's purpose was to "engage in the business of providing ... lands for grazing ... for the use and benefit of its members and not for the purpose of direct gain to the association itself." *Id.*

We find the reasoning of the Ninth Circuit persuasive. The statute under which a corporation organizes is not conclusive proof of the corporation's purpose. Although Sunset incorporated under a statute enabling the existence of corporations which have as their purpose the realization of profit, this fact is not conclusive proof that Sunset actually has as its purpose the realization of profit. Unlike the Owyhee Grazing Association, nothing within Sunset's articles of incorporation suggests what Sunset's corporate purpose is.

In determining Sunset's corporate purpose, we find that some of the principles developed under federal tax law are helpful in the present instance. *See Annotation, Internal Revenue–Exempt Organization,* 69 A.L.R.2d 871.

> The charter or other instrument by which an organization comes into being is not conclusive on the issue of the purposes for which it is organized, and the court may consider extrinsic evidence on the issue. And the fact that an organization was incorporated under the general business corporation laws, rather than under the laws relating to charitable, educational, or nonbusiness corporations does not preclude a finding that it was organized exclusively for exempt purposes [i.e., purposes other than the realization of profit]. The purpose for which a corporation has been organized is a question of fact, to be determined from all the evidence, including statements in the charter and evidence concerning the circumstances surrounding its organization, the purposes and intentions of the incorporators, and the activi-

ties of the corporation and of any predecessor organization.

69 A.L.R.2d at 879.

█ If it is determined that the sole purpose of Sunset's corporate existence is to provide a social and golfing club to its members, it could arguably escape the *Purdy* rule. A membership corporation, although a corporate entity, is similar to an unincorporated association, and the same rules concerning members and their rights apply to both. *Raulston v. Everett,* 561 S.W.2d 635, 638 (Tex.Civ.App.1978). Such an organization can terminate an individual's membership pursuant to authority granted by a by-law alone. *Id.* Private clubs and membership corporations provide an at-will relationship between the participating member and the association. *Hartung v. Audubon Country Club, Inc.,* 785 S.W.2d 501, 503 (Ky.App. 1990); *Everglades Protective Syndicate, Inc. v. Makinney,* 391 So.2d 262, 265 (Fla.App. 1981). The rights of a member of a private club are governed by its by-laws which constitute the agreement between the corporation and its members. *Bartley v. Augusta Country Club, Inc.,* 254 Ga. 144, 326 S.E.2d 442, 443 (1985).

Thus, the purpose of Sunset's corporate existence is crucial to resolving the enforceability of Sunset's by-law which authorizes the expulsion of members. However, because this case comes before us on summary judgment, the record upon which this issue must be determined is sparse. Nania contends we need only look to Sunset's incorporation pursuant to the for-profit statutes. Although we reject this contention as an absolute, we acknowledge that Sunset's corporate existence pursuant to laws applicable to for-profit corporations raises an inference that it is a corporation organized for pecuniary gain. Such an inference, however, is subject to rebuttal by evidence concerning the circumstances surrounding its organization, the intention of the incorporators, and the activities of the corporation. Such matters have not been developed in the record presented to us. Sunset's Certificate of Incorporation for "manufacturing and business purposes" as issued by the Secretary of State in 1938 and Sunset's contention that its sole

purpose is to furnish a social and golfing club to its members create a dispute over a material factual issue. Accordingly, summary judgment is inappropriate.

One further issue needs to be addressed for consideration on remand. In his petition Nania alleges that his expulsion was arbitrary, capricious, malicious, and made in bad faith. As evidence of this, Nania points to the fact that he was singled-out for expulsion while others similarly situated, particularly the eight members who joined him as plaintiffs in the unsuccessful mandamus action, were reinstated. Sunset argues that such a contention is irrelevant when expulsion from a private club or organization does not involve economic loss. Moreover, Sunset argues that the actions of the governing body of a private social club are beyond the jurisdiction of judicial intervention.

 It is well established as a general rule that courts will not interfere with the internal affairs of a private, social organization in the absence of a threatened deprivation of economic or property rights. *State ex rel. Hyde v. Jackson County Medical Society*, 295 Mo. 144, 243 S.W. 341, 343 (1922); *Potter v. Patee*, 493 S.W.2d 58, 60–61 (Mo.App. 1973); *State ex rel. Buckner v. Landwehr*, 261 S.W. 699, 701 (Mo.App.1924). Judicial intervention, where appropriate, is limited to protecting the property rights directly involved. *Buckner*, 261 S.W. at 701.

In his petition, Nania alleges that he has sustained the loss of a "valuable right of association within the club and his property interest therein." Whether a right of association is a property right is highly questionable and, in the case of a private social club, must be balanced against an equally cogent right not to associate. Neither the petition nor the sparse record before us contains any specific detail regarding the alleged loss of property interest. On remand, in the event Sunset is found to be a private membership corporation rather than a for-profit corporation, it would be incumbent upon Nania to prove that he has sustained the loss of a specific economic or property right in order to invoke the jurisdiction of the court.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

GRIMM, P.J., and AHRENS, J., concur.