NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals
## Division One

RONALD GOLD, *Plaintiff/Appellant*,

*v.*

WHISPER ROCK GOLF, LLC, *Defendant/Appellee*.

No. 1 CA-CV 22-0608
FILED 6-27-2023

Appeal from the Superior Court in Maricopa County
No.  CV2021-002816
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Sacks Tierney PA, Scottsdale
By Michael L. Kitchen, James C. Golden
*Counsel for Plaintiff/Appellant*

Stinson LLP, Phoenix
By Jeffrey J. Goulder, Michael Vincent
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

**¶1**          Ronald Gold appeals the superior court's grant of summary judgment to Whisper Rock Golf, L.L.C. ("Whisper Rock") on his claims challenging his removal from Whisper Rock's membership. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**          Because Gold challenges a grant of summary judgment against him, we state the facts in a light most favorable to him. *Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, 191, ¶ 2 n.1 (App. 2002).

**¶3**          Whisper Rock is a private golf club owned by Gregg Tryhus. Membership is by invitation only, and Tryhus makes all membership decisions for the club. When a membership becomes available, Tryhus interviews candidates and decides who will be invited to join.

**¶4**          Gold became a Whisper Rock member in 2012. At that time, he received, among other club documents, a Membership Agreement and the Club Rules and Regulations ("Club Rules"). The Club Rules include the following "Discipline" provisions:

> 1.      If [Whisper Rock] determines that a Member's conduct . . . is likely to harm or adversely affect the welfare, safety, harmony or good reputation of the Members, [Whisper Rock] or any personnel at the Club, or is otherwise improper or in violation of these Rules and Regulations, then [Whisper Rock] may reprimand or fine the Member, suspend all or part of the Member's membership privileges . . . or terminate the Member's membership in the Club. [Whisper Rock] shall be the sole judge of whether a person's conduct was improper or in violation of the foregoing standards.
>
> 2.      Following any determination by [Whisper Rock] that a Member . . . engaged in improper conduct or in other conduct

in violation of Club standards, [Whisper Rock] shall notify the affected Member of any reprimand, fine or suspension imposed by [Whisper Rock] as a result of such conduct, and, if applicable, of [Whisper Rock's] intent to terminate the Member's membership in the Club. The Member shall be given a reasonable opportunity to discuss privately with [Whisper Rock] any reasons why the Member disagrees with the discipline imposed by [Whisper Rock]. Pending any such discussion, the Member's membership privileges may be terminated or suspended if deemed appropriate by [Whisper Rock]. All determinations of [Whisper Rock] as to disciplinary matters, including the termination of Member's membership in the Club, shall be final and binding, without right of appeal.

**¶5** Gold participated in numerous Whisper Rock golf events while he was a member. He played in a January 26, 2017 qualifying event but left the course two holes in. Two days later, Trent Rathbun, Whisper Rock's director of golf, contacted Gold to tell him that Tryhus was terminating his membership. At that time, Rathbun stated the only basis for Gold's termination was his departure from the January 2017 event.

**¶6** Around that same time, Gold had two telephone conversations with Tryhus. In the first, Gold asked Tryhus to reconsider his termination, suggesting that he instead be suspended. In the second, Tryhus confirmed Whisper Rock would terminate his membership. Gold then met with Rathbun a few days later and again asked Whisper Rock to reconsider. Rathbun proposed that Whisper Rock would (1) tell third parties he resigned, (2) allow him to reapply for membership in one year, and (3) seriously consider his reapplication. Gold agreed and resigned.

**¶7** In November 2018, Gold reached out to Denny Pelle, Whisper Rock's membership liaison, recapping his earlier discussions with Tryhus:

> I asked that instead of leaving that I be suspended. Greg said it would be best that I resign and then reapply. I asked him how long and he said one year, reapply and my friends would be asked or contacted about how they felt about my return.

Gold also named multiple Whisper Rock members who he believed "would support my coming back." Pelle responded that he would "begin to reach out to members" but that "we have several Proposals that Gregg really likes and he is just waiting to have some resignations so he can fill with the right

guys that will support our culture, traditional golf, respect each other and our staff, and enjoy the hang."

¶8  In February 2019, Gold contacted Tryhus to tell him he would begin the reapplication process. Tryhus emailed Gold on February 25, 2019, commenting that Gold "ha[d] certainly been successful at getting the word out about wanting to rejoin" and noting that he, Pelle, and Rathbun "ha[d] all been approached by members relative to you rejoining." Tryhus further wrote:

> While I know you have friends up there, I'm sorry to say that unfortunately you also have detractors who have heard about your recent efforts to find four members to sponsor you back in.
>
> When existing members are willing to take an oral stance to inform us they don't want a certain prospective member let in, I don't let that prospective member in. . . . Given the activity level required to find four sponsors and the number of current conversations around the topic right now, I felt it was only fair to inform you quickly and preempt any additional time spent – Rejoining the club is not going to happen at this time.

Gold responded approximately two weeks later, calling "the actions described in [Tryhus'] email . . . defamation." He stated that he would file a "defamation lawsuit" if not given an apology and "immediate membership." Tryhus refused Gold's demands.

¶9  Gold sued Whisper Rock in February 2021, seeking reinstatement and alleging breach of contract, breach of the covenant of good faith and fair dealing, and negligent and fraudulent misrepresentation. Whisper Rock moved for summary judgment, contending "the only question for [the] Court is whether the Club's governance processes were applied." The club also contended that by resigning and later seeking readmission, Gold waived his argument that the club improperly terminated his membership. Whisper Rock also offered numerous declarations from several club members who opposed Gold's readmission to support its contention that Gold had "caused repeated disruptions within the membership," "repeatedly demonstrated unacceptably poor sportsmanship in Club events," and had been "disrespectful toward Club employees and personnel" before the January 2017 event.

4

¶10 Gold opposed the motion and requested additional time to depose Tryhus and the club member declarants under Arizona Rule of Civil Procedure ("Rule") 56(d). The court denied Gold's Rule 56(d) request, noting that the litigation had been pending for more than a year and that Whisper Rock had complied with the court's policy requiring parties to "exchange letters about the bases of contemplated summary judgment motions 30 days in advance." The court also determined that while most of the declarations Whisper Rock offered were "minimally relevant," Gold "cannot be surprised" that the testimony of four witnesses he disclosed as "members who would support his effort to rejoin the club," each of whom offered declaration testimony opposing his reinstatement, would be significant. It also determined that depositions of those declarants would "accomplish nothing" because Gold "did not dispute any of [their] factual assertions."

¶11 A few weeks later, the court granted Whisper Rock's motion. The court determined the Club Rules only required Whisper Rock to provide "notice to Gold and a 'reasonable opportunity' to privately discuss the matter." The court further reasoned that because the Club Rules made Whisper Rock the "sole judge" to decide if a member's conduct threatens the "welfare, . . . harmony or good reputation" of the club, members, or employees, "[i]t is difficult to conclude that Whisper Rock using that discretion to assess Gold's conduct denied Gold of a benefit of the bargain." The court also rejected Gold's fraudulent and negligent misrepresentation claims, finding that Whisper Rock had "contacted the members Gold identified, asked their opinion, and rejected Gold when his identified members said not to invite him back."

¶12 Whisper Rock applied to recover approximately $275,000 in attorney fees under paragraph X of the Membership Agreement:

> If the Member . . . threatens or brings a legal action of any nature against [Whisper Rock] . . . in connection with membership in the Club . . . and fails to obtain a judgment thereon against [Whisper Rock] . . . , then the person threatening or bringing such action shall be liable to [Whisper Rock] . . . for all costs incurred by them in the defense of such action, including court costs and attorney's fees and expenses through all appellate proceedings.

The court awarded Whisper Rock's entire fee claim over Gold's objections.

¶13            Gold timely appealed following the entry of final judgment. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**I.        The superior court did not abuse its discretion in denying Gold's Rule 56(d) request.**

¶14            We first address Gold's challenge to the superior court's denial of his request for Rule 56(d) relief. Rule 56(d) applies when a party opposing summary judgment "cannot present evidence essential to justify its opposition[.]" Ariz. R. Civ. P. 56(d)(1); *see also Gullett ex rel. Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 241 Ariz. 532, 541, ¶ 29 (App. 2017) ("[A] claimant is ordinarily entitled to a reasonable opportunity to conduct discovery in order to obtain evidence with which to oppose [a summary judgment] motion."). To obtain relief, a party must file a request with a supporting affidavit establishing specific and adequate grounds for the request and addressing, if applicable, the following:

the particular evidence beyond the party's control;

the location of the evidence;

what the party believes the evidence will reveal;

the methods to be used to obtain it;

an estimate of the amount of time the additional discovery will require; and

a good faith consultation certificate complying with Rule 7.1(h).

Ariz. R. Civ. P. 56(d)(1)(A)-(B). We review the court's ruling for an abuse of discretion. *St. George v. Plimpton*, 241 Ariz. 163, 165, ¶ 11 (App. 2016) (citing former Rule 56(f)).

¶15            Gold requested additional time in part to depose the Whisper Rock members who provided declarations in support of Whisper Rock's motion. He simultaneously argued, however, that their declarations were "irrelevant" and had "little bearing on the material facts at issue in Whisper Rock's motion." Indeed, Gold stated that he only wanted to depose them if the court first determined the declarations were relevant and even then only vaguely contended the depositions would uncover "factual disputes."

¶16  The court largely agreed with Gold that the member declarations were "minimally relevant," finding that they only "documented unpleasant experiences with Gold over the years." Gold does not suggest otherwise on appeal. The court therefore did not abuse its discretion in denying Gold's request to depose these declarants. *See Birth Hope Adoption Agency, Inc. v. Doe*, 190 Ariz. 285, 288 (App. 1997) (denying relief where "the evidence sought could not create a material issue of fact" and was not "essential" to opposing the pending summary judgment motion); *Lewis v. Oliver*, 178 Ariz. 330, 338 (App. 1993) (stating that the rule "allows a party to request additional time to respond to a motion for summary judgment in order to undertake *necessary* additional discovery") (emphasis added).

¶17  Gold also requested additional time to depose Tryhus. He did not explain why he waited more than a year to seek his deposition despite alleging in his complaint that Tryhus made the decision to terminate Gold's membership. Additionally, Whisper Rock disclosed that it intended to move for summary judgment one month before doing so. The court did not abuse its discretion in finding Gold did not act diligently in pursuing Tryhus' deposition. *See Simon v. Safeway, Inc.*, 217 Ariz. 330, 333, ¶ 6 (App. 2007) (the "major objective" of former Rule 56(f) is "to insure that a diligent party is given a reasonable opportunity to prepare his case") (quoting *Hunter Contracting Co., Inc. v. Superior Court*, 190 Ariz. 318, 322 (App. 1997)).

## II.  The superior court did not err in granting summary judgment.

¶18  We next address Gold's challenges to the summary judgment ruling. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in a light most favorable to Gold as the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022).

¶19  "The relationship between members of a voluntary association is contractual." *Aspell v. Am. Cont. Bridge League of Memphis, Tenn.*, 122 Ariz. 399, 401 (App. 1979). As such, courts typically do not intervene in a social organization's internal disputes. *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 305 (App. 1988). But a terminated member can obtain judicial relief if the organization's decision "violated [the applicable] by-laws or was in bad faith, fundamentally unfair, fraudulent or utterly unsupported by any evidence." *Id.*; *see also Aspell*, 122 Ariz. at 402 (association breaches membership contract if it disciplines a member in

7

violation of "the terms of the contract setting out appropriate grounds and procedures for disciplinary action").

## A. Gold did not waive his ability to seek judicial relief.

**¶20** Whisper Rock contends, as it did below, that Gold waived any claim that his membership was improperly terminated by resigning. "Waiver is the voluntary and intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right." *Cavallo v. Phoenix Health Plans, Inc.*, 254 Ariz. 99, 105, ¶ 22 (2022). Whether a party has waived a right typically presents questions of fact. *Russo v. Barger*, 239 Ariz. 100, 105, ¶ 20 (App. 2016). The superior court did not consider waiver, but we may affirm summary judgment for any reason supported by the record. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014).

**¶21** The parties dispute whether Gold truly resigned, as Gold presented evidence suggesting the parties agreed to call his termination a "resignation" so he "could save face" and "reapply for membership in one year." Moreover, while resignation may have come with the opportunity to reapply, Whisper Rock cites no evidence to suggest that Gold also intended to give up his ability to seek judicial relief. *See Goglia v. Bodnar*, 156 Ariz. 12, 19 (App. 1987) ("A clear showing of intent to waive is required for waiver of rights."). We therefore reject Whisper Rock's waiver argument.

## B. Whisper Rock's for-profit status is irrelevant.

**¶22** Gold contends we should review his termination for "strict compliance" with the Club Rules because Whisper Rock is a for-profit company, citing *Nania v. Sunset Country Club*, 870 S.W.2d 459 (Mo. Ct. App. 1994). In *Nania*, a country club suspended several shareholders who had sued the club's president to compel him to call a shareholder meeting. *Id.* at 460. On appeal, the suspended shareholders argued the club lacked authority to suspend them because it was a corporation "organized for gain" and, therefore, "ha[d] no power of expulsion or forfeiture unless granted by their charter or by general municipal law." *Id.* at 461 (quoting *Purdy v. Banker's Life Ass'n of Des Moines*, 74 S.W. 486, 490 (Mo. Ct. App. 1903)). The club's charter granted no such power, but an existing bylaw allowed it to suspend members for conduct "prejudicial to the good order, peace, or interest of the Club." *Nania*, 870 S.W.2d at 461.

**¶23** The court rejected as an "oversimplification" the shareholders' argument that the Club's organization under for-profit corporation statutes served as "conclusive proof that the purpose of its

8

existence is the realization of profit." *Id.* at 461. And it vacated summary judgment for the club, concluding that factual questions remained as to whether the club was "organized for gain."*Id.* at 462 (citations omitted). *Nania* does not stand for the proposition that a club's for-profit status automatically imposes a "strict compliance" standard.

¶24 Gold also contends he was entitled to a "full and fair hearing" based on Whisper Rock's for-profit status. He cites *Cunningham v. Burbank Bd. of Realtors*, 262 Cal. App. 2d 211, 214 (Cal. Ct. App. 1968) for the proposition that a member of a for-profit organization "is entitled to a full and fair hearing on the charge leading to any expulsion and the hearing must be in accordance with the rules of the association and the law of the land." *Cunningham* involved an expulsion from a trade association that, if allowed to stand, "would have made it impossible for plaintiffs to continue in business" as realtors. *Id.* And our supreme court has recognized a general policy that "[t]he interests in freedom of association and in autonomy for private associations make it desirable to allow private groups to determine their own membership." *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 244 (1964). Although the court cabined that policy by noting that if the medical society at issue "control[led] a doctor's access to hospital facilities, . . . the society's exercise of quasigovernmental power [would be] the legitimate object of judicial concern." *Id.*

¶25 Gold, a "successful semi-retired attorney and businessman," presented no evidence to suggest he suffered any harm to his trade or profession. He instead alleged he was "denied the benefits of his paid membership" and "ha[d] been placed in the position where he is unable to join any other private clubs." But he also alleged he was playing golf at another golf club. As such, neither *Cunningham* nor *Blende* applies.

### C. Gold received notice and a reasonable opportunity to discuss his disagreement with the discipline imposed.

¶26 As discussed above, the Club Rules require Whisper Rock to "notify the affected Member of [its] intent to terminate the Member's membership" and provide "a reasonable opportunity to discuss privately . . . any reasons why the Member disagrees with the discipline imposed."

¶27 The undisputed record establishes notice, as Tryhus spoke with Gold the day after he walked off the course regarding his termination. Gold also presented evidence that Rathbun called him the next day notifying him of the termination.

¶28 Gold contends this notice was improper because Whisper Rock "communicated to Gold that he was terminated as a *fait accompli* after the termination had already been decided." But the contemporary emails he offered suggest otherwise. Gold emailed Rathbun and Tryhus on January 27, 2017, stating that he had "talked with Greg today" and asking for a meeting "to [g]o over my past actions so I'm [a]ware of them so they can be corrected in the future." He also met with Rathbun "[a] few days later" and requested that Whisper Rock reconsider his termination. In that meeting, Gold asked that the discipline be reduced to a suspension.

¶29 Gold also met with Rathbun, who told him Whisper Rock would agree to communicate the termination externally as a resignation and allow him to reapply for membership after one year. Gold then emailed Rathbun on February 3 stating that since he had not heard back "I'm assuming there has been no change." Rathbun responded four hours later, stating that "unfortunately we are moving forward with your resignation."

¶30 Gold's own emails also show he was given reasonable opportunities to discuss the discipline imposed. Gold had two telephone conversations in which he asked Tryhus to reconsider the termination. And, as noted above, he also asked Rathbun to reconsider the termination. Gold again contends these discussions happened "after the termination had already been decided," but the Club Rules require a reasonable opportunity to discuss "the discipline *imposed*," not "the discipline *to be imposed*." Gold thus did not show Whisper Rock failed to comply with the Club Rules.

## D. Whisper Rock was not limited to imposing penalties under the Rules of Golf.

¶31 Gold next contends, correctly, that the Club Rules incorporate the United States Golf Association's Rules of Golf. Citing section 5.7 of those rules, he argues that because his termination was solely related to his decision to walk off the course during the January 26, 2017 event, the maximum penalty Whisper Rock could impose was disqualification from that event.

¶32 But the Club Rules provide that the Rules of Golf give way "when in conflict with local rules or with these Rules and Regulations." And paragraph K(1) of the Club Rules allows Whisper Rock to impose discipline up to and including termination for (1) conduct in violation of the Club Rules; (2) conduct "likely to harm or adversely affect the welfare, safety, harmony or good reputation of the Members, WRG, or any personnel at the Club;" or (3) conduct that is "otherwise improper." As

such, even assuming Whisper Rock terminated Gold's membership solely because he left the January event, the Club Rules allowed Whisper Rock to impose discipline beyond that permitted by the Rules of Golf.

### E.      Gold failed to show a lack of fundamental fairness.

**¶33**        Gold next cites *Rowland* for the proposition that "fundamental fairness requirements restrict the discretion Whisper Rock, as a for-profit entity, could exercise in terminating Gold's membership." The dispute in *Rowland* was whether Union Hills Country Club had complied with procedural requirements set forth in its bylaws when it expelled certain shareholder-members. *Rowland*, 157 Ariz. at 305. As discussed above, Whisper Rock gave Gold notice and reasonable opportunities to discuss the discipline imposed, which is all the Club Rules required.

**¶34**        Gold also cites *Arizona Osteopathic Medical Ass'n v. Fridena*, 105 Ariz. 291 (1970) to suggest that "[i]f certain fundamental safeguards, such as notice or an unprejudiced adjudicator, have not been provided . . . [then] the member has been wrongfully disciplined, and thus, the [entity] has breached its contract with [the member]." *Fridena* only involved notice, as our supreme court held that registered letters sent to Dr. Fridena "were reasonably calculated, under all the circumstances, to apprise him of the proceedings against him." *Id*. at 293. And the association's bylaws required sending notice of disciplinary proceedings via registered mail. *Id*. at 292–93. The court rejected Dr. Fridena's argument that additional notice was required. *Id*. at 293.

**¶35**        Gold reiterates his argument that Whisper Rock "had already terminated [him] at the time it allegedly provided him any 'notice' and 'opportunity to be heard,'" contending Rathbun told him two days after the January 2017 event "that the decision to terminate him had already been made and that Whisper Rock would not reconsider." But he sought reconsideration nonetheless. And after discussing the matter with Tryhus and Rathbun, he submitted a resignation letter.  Gold now contends he resigned under duress, but he presented no evidence to suggest Whisper Rock acted or threatened him in a way that prevented him from exercising his judgment. *See USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 357 (App. 1986) ("Duress is an act or threat that results in the preclusion of the exercise of free will and judgment.").

### F.      Gold did not establish substantive unfairness or bad faith.

**¶36**        Gold next contends his termination was substantively unfair, again contending (1) he was terminated solely for leaving the January 2017

event and (2) the Rules of Golf only allow for disqualification. We addressed the latter argument above. As for the former, Gold's own emails suggest there were additional reasons for his termination, as he emailed Rathbun one week after the event thanking him for "meeting with me to review how my actions were seen by staff." He also identified two discrete issues in a February 2019 email to Tryhus—the January 2017 walk-off and his "request for a ruling" in a different event that led to him "quitting the round" in that event as well.

**¶37** Gold also contends Whisper Rock acted arbitrarily, citing cases addressing the implied covenant of good faith and fair dealing. Generally, the implied covenant cannot directly contradict express contractual terms but can be breached if a party exercises discretion in a manner inconsistent with reasonable expectations. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423–24, ¶ 14 (App. 2002). Gold's argument here again hinges on his contention that he "was terminated for an allowable course of conduct"—specifically, walking off the course in January 2017. Assuming the Rules of Golf allowed him to walk off the course, the Rules of Golf do not control in this litigation.

### G. Gold did not establish any genuine issues of material fact.

**¶38** Gold next contends genuine issues of material fact preclude summary judgment. Rather than identify any specific factual questions, he broadly contends "the question of whether a party acted reasonably is a question of fact rightfully for the fact-finder's consideration," citing his entire controverting statement of facts and all attached exhibits. We will not comb the record to make Gold's arguments for him. *Zeagler v. Buckley*, 223 Ariz. 37, 40, ¶ 10 n.6 (App. 2009). The only specific arguments that Gold raises are restatements of his contentions that he did not receive advance notice of the termination and that Whisper Rock terminated his membership solely because he walked off the course during the January 26, 2017 event. We need not address these arguments again.

### III. Gold did not show the superior court erred in awarding Whisper Rock attorney fees.

**¶39** Gold also challenges the attorney fee award. As noted above, Paragraph X of the Membership Agreement calls for an award of "*all* costs incurred . . . in the defense of [the] action, including court costs and attorney's fees and expenses through all appellate proceedings." We enforce a contractual fee provision according to its terms. *Berry v. 352 E. Virginia*, *LLC*, 228 Ariz. 9, 13, ¶ 17 (App. 2011). The superior court's

discretion to award fees is limited when, as here, a contract calls for the recovery of "all" attorney fees. *Geller v. Lesk*, 230 Ariz. 624, 628, ¶ 11 (App. 2012). In such cases, once the prevailing party makes a prima facie showing that the fees requested are reasonable, the burden shifts to the opposing party to show the claimed fees are clearly excessive. *Id.* If he does not meet that burden, the party requesting fees is entitled to full payment. *Id.*

¶40　　　　Gold first contends the court awarded fees "without any analysis," but it was not obligated to provide any. *See Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, 267, ¶ 25 (App. 2004) (stating that the superior court need not "set forth a detailed factual basis for a fee award").

¶41　　　　Gold next contends the fee award was "unreasonable on its face" but simply repeats several objections he raised below. The superior court considered and overruled these objections, and Gold does not suggest the court abused its discretion in doing so. *See State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 595 (App. 1992) ("An abuse of discretion occurs where no reasonable basis exists in the record from which the trial judge could award the fees."); *see also Chase Bank of Arizona v. Acosta*, 179 Ariz. 563, 574 (App. 1994) (cautioning against "frequent appellate review of what essentially are factual matters" in attorney fee award challenges). Gold also relies on an unreported federal district court decision addressing reasonableness factors from that court's local rules. *See Two Bros. Dist. Inc. v. Valero Mktg. & Supply Co.*, 2019 WL 3997372, at *2 (D. Ariz. Aug. 23, 2019) (citing LRCiv 54.2(c)(3)). Those local rules do not apply here.

¶42　　　　Gold also contends Whisper Rock's counsel engaged in "pervasive . . . block billing," citing *In re Guardianship of Sleeth*, 226 Ariz. 171 (App. 2010), to contend that Arizona courts "will reduce fee awards accordingly." *Sleeth* involved a fee claim under Section 14-11004, not a contractual fee provision. *Id.* at 177, ¶ 28. And while we were critical of counsel's billing practices in *Sleeth*, we remanded to allow the superior court to consider whether "each entry of block-billing provides sufficient detail to support an award for that entry." *Id.* at 178, ¶ 34. In other words, block billing standing alone does not bar recovery. *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 138, ¶ 21 (App. 2016). As Gold only contends certain entries were block-billed, he did not establish the block-billed fees were clearly excessive. We therefore affirm the fee award.

## ATTORNEY FEES AND TAXABLE COSTS ON APPEAL

¶43　　　　Both parties request their attorney fees and costs incurred in this appeal under paragraph X of the Membership Agreement. Whisper

Rock is the prevailing party and may recover attorney fees and costs upon compliance with ARCAP 21.

## CONCLUSION

¶44        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:        JT