Kevin BRAZIL, Plaintiff,

v.

Max K. RICKERSON, individually and as Trustee of the Max K. Rickerson Living Trust, Craig M. Abbott, individually and as Trustee of the Craig M. Abbott Living Trust of March 6, 1992, Excel Investments, Inc., and Excel Investments III, Inc. Defendants.

No. 02–0455–CV–W–GAF.

United States District Court, W.D. Missouri, Western Division.

June 3, 2003.

David W Hauber, Baty Holm & Numrich, PC, Robert P Numrich, Baty Holm & Numrich, PC, Kansas City, for Kevin Brazil, Sonic Drive–In of Clinton, Missouri, LLC, Sonic Drive–In #2 of Jefferson, Missouri, LLC, Sonic Drive–In of Marshall, Missouri, LLC, Plaintiffs.

Charles H Apt, III, Iola, KS, Spencer Joseph Brown, Deacy & Deacy, LLP, Kansas City, for Max K. Rickerson, individually and as Trustee of the Max K. Rickerson Living Trust, Excel Investments, Inc., Excel Investments III, Inc., Craig M Abbott, individually and as Trustee of the Craig M. Abbot Living Trust as of March 6, 1992, Defendants.

## ORDER

FENNER, District Judge.

Presently before the Court is Plaintiff Kevin Brazil ("Brazil")'s Motion for Partial Summary Judgment. Brazil asserts that he has been wrongfully expelled from three limited liability companies, which were formed to manage three different Sonic Drive–In restaurants. Brazil argues that there is no question of material fact as to the interpretation of the operating agreements entered into between Brazil and Defendant Max K. Rickerson et al. ("Defendants"). According to Brazil, the Defendants had no authority, under the operating agreements, to expel Brazil. Brazil contends that, in addition to being wrongfully expelled, Defendants paid him an insufficient amount of money for his interests. Brazil also claims that there is an absence of material fact on several other issues, thus allowing this Court to enter partial summary judgment. The Defendants dispute Brazil's contentions and respond that they did have the authority to expel Brazil and that he has been fully compensated for his interests. As to whether Brazil was legitimately expelled, Defendants contend that several issues of material fact remain to be resolved before a proper determination of that issue can be made. Likewise, genuine issues of material fact underlying all Brazil's other requests also preclude summary judgment, according to Defendants. Thus, says Defendants, Brazil's motion should be denied.

## DISCUSSION

### I. Facts

Plaintiff Kevin Brazil was a member of three different limited liability companies ("LLCs"). Those companies were formed for the purpose of managing three Sonic Drive–In locations. Two of the LLCs were governed by an identical operating agreement. The identical operating agreements applied to the LLCs managing the Jefferson City, Missouri drive-in and the Marshall, Missouri drive-in. The third LLC managed the Clinton, Missouri location and was governed by a slightly different operating agreement. Each LLC was comprised of different members with different ownership interests.

The Jefferson City LLC was formed on May 1, 1995. It had as members Brazil, Mike Bishop, and Excel Investments III, Inc. ("Excel III"). Brazil owned 10%, Bishop owned 5%, and Excel III owned 85%. On June 1, 1995, Brazil entered into an agreement with Excel III whereby Brazil would purchase an additional 5% share from Excel III. The language of the June 1, 1995 agreement states that the 5% purchase would be effective on and after June 1, 1996. On July 1, 1996 Brazil and Excel III entered into another agreement whereby Brazil would purchase a 5% share from Excel III. These facts were admitted by Defendants. *See* Pl. Amend. Complaint ¶ 24, *and* Def. Answer ¶ 24. A September 1, 1996 amendment to the operating agreement reflected the new ownership interests and indicated that Brazil's share in the Jefferson City LLC was 20%. In March of 2001, Brazil sold a 5% share back to Excel III. Hence, when Defendants expelled Brazil in December 2001, Brazil owned a 15% share of the Jefferson City LLC.

The Marshall LLC was formed on July 1, 1994. It had as members Brazil, Jeff Bellamy, and Excel Investments, Inc.

("Excel"). Brazil owned 15%, Bellamy owned 10%, and Excel owned 75%.

The Clinton, Missouri LLC was formed on October 14, 1994. It had as members Brazil, Umstattd, Inc., and Excel. Brazil owned 25%, Unstattd, Inc. owned 24%, and Excel owned 51%.

In April 2001, Defendants began to discuss with Brazil the prospect of buying out his interests in the LLCs. Defendants offered to purchase Brazil's shares in the Clinton, Marshall, and Jefferson City LLCs for 2½ times earnings. Brazil responded with a counter-offer that the Defendants rejected. Brazil then alleges that Defendants embarked on a course of action to expel, or "force", him out of the LLCs.

On December 14, 2001, Defendants sent a Notice of Termination of Membership to Brazil. The notice stated that Brazil's membership in the LLCs was terminated effective December 31, 2001. The notice also stated that the termination of Brazil was being taken pursuant to Article 7 of each operating agreement. Article 7.01(a) of the Jefferson City and the Marshall operating agreements states as follows:

> If any Member shall, in the opinion of a majority in interest of the Members, be guilty of misconduct or act in any manner inconsistent with the good faith observable between Members to such an extent as to render it impracticable for the then members to carry on the Company business together, the offending Member may be expelled from the Company.

Article 7 makes no mention of a meeting or vote to terminate the membership of the offending Member. Under Article 5.06, if the Supervising or Managing Member is to be removed, there must be a vote of the majority in interest and the Supervising or Managing Member at issue is not entitled to vote.

Article 7 of the Clinton LLC is not identical to the Jefferson City and the Marshall LLC operating agreements. Article 7 of the Clinton LLC only provides for the expulsion of a Designated Managing Member. An early draft of the Clinton operating agreement did contain language identical to that of the Jefferson City and Marshall agreements, but that language was removed by agreement of the parties. On January 1, 1998, the members of the Clinton LLC entered into a Manager Agreement and Supervising Member Agreement. The agreement was signed by all members of the Clinton LLC. The agreement modified the amount the Supervising Member was to be compensated in the event the Supervising Member was "expelled, [ ] terminated or voluntarily with[drew][.]" Pl.Ex. 35. The agreement also specified that "[t]ermination of a Supervising Member shall be effective upon mailing of notice of termination to the Supervising Member." According to the drafter of this agreement, while not containing the phrase "this is intended to amend the operating agreement," the agreement did serve to amend the operating agreement. Deposition of Zachery E. Reynolds at 184:1–6.

Upon termination of Brazil's interests in the LLCs, Defendants paid Brazil what they calculated was the amount of Brazil's interests in the companies. Defendants compensated Brazil for a 25% share in the Clinton LLC, a 15% share in the Marshall LLC, and a 10% share in the Jefferson City LCC. Those amounts were calculated at a rate of two times earnings and equaled $106,397.38, $56,039.91, and $7,770.47 respectively.

Brazil then filed the current lawsuit alleging damages for breach of fiduciary duty/conversion, tortious interference with a contract, conspiracy tort/aiding and abetting, and breach of contract. Brazil claims

that Excel and Excel III have breached the fiduciary duty they owe to Brazil by wrongfully terminating Brazil's interests in the LLCs and by denying Brazil distributions. Brazil alleges that Defendants Rickerson, Abbott, and their respective Living Trusts have tortiously interfered in Brazil's contracts with the LLCs. Finally, Brazil accuses all Defendants of conspiracy tort and breach of contract.

Brazil currently seeks this Court to interpret specific provisions of the LLC operating agreements and to make certain pronouncements. Brazil asks the Court to interpret the Clinton LLC operating agreement and find that Excel lacked the necessary authority to terminate his membership in the Clinton LLC. Brazil makes a similar request of the Marshall and the Jefferson City LLC operating agreements except that, with respect to these two LLCs, Brazil desires a declaration from the Court that there was no factual basis upon which to expel Brazil. Brazil also requests various determinations. These determinations are more properly classified as further motions for partial summary judgment. Brazil urges this Court enter judgment that (1) Defendants had no power to expel Brazil from the Jefferson City and from the Marshall LLCs, (2) Defendants had no power to expel Brazil from the Clinton LLC (3) Defendants owed fiduciary duties to Brazil, (4) Defendants have breached their fiduciary duties to Brazil by commingling funds, withholding distributions, failing to notify Brazil of a meeting or a vote to expel him, and by failing to fully compensate Brazil for his 20% share of the Jefferson City LLC, (5) Plaintiff is entitled to a judgment that Defendants have converted distributions owed to him, (6) Defendants have engaged in self-dealing by expelling Brazil and by taking his distributions, and by selling Brazil's interests in the LLCs for a profit, (7) Brazil is entitled to a judgment ordering Defendants to disgorge all profits re-ceived as a result of wrongful behavior and pay such sums to Brazil, and (8) a full audit and accounting should be made. Defendants contest Brazil's motion arguing that each LLC had the power to expel a member upon a determination of the majority in interest. Defendants assert that no meeting or notice was required and that Defendants properly expelled Brazil. As to the remaining determinations sought by Brazil, Defendants posit that the Court cannot make such determinations because genuine issues of material fact underpin each requested declaration preventing summary judgment.

## II. Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a

whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

At the summary judgment stage the judge's function is not to weigh the credibility of the evidence, but rather to determine whether a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

### III. Analysis

As to Brazil's specific requests, the Court is able to interpret the applicable operating agreements as there is some doubt as to the provisions of the agreements. The Court is not able, however, to simply declare breaches as is sought by Brazil. The judgments that Brazil seeks are not proper at this point in the litigation. Therefore, Brazil's motion will be granted in part and denied in part.

### A. Operating Agreement Interpretation

▮ The interpretation of corporate articles and by-laws is to be governed by general rules of contract interpretation. *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1220 (8th Cir.1992). Contract interpretation and construction is a question of law which the court decides, not the jury. *Id.* Words or phrases that are unambiguous are to be given their common sense, ordinary meaning. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973). A contract or a contractual provision is ambiguous if it is susceptible of more than one meaning. *G.A. Imports, Inc. v. Subaru Mid–America, Inc.*, 799 F.2d 1200, 1206 (8th Cir.1986). In determining whether contract language is ambiguous, the court should read the contract as a whole, not just the single word or phrase. *Sun Oil Co. v. Vickers Ref. Co.*, 414 F.2d 383, 387 (8th Cir.1969). Evidence of prior negotiations and other circumstances may also be used when considering if a contractual provision is ambiguous. *Id.* Failing these interpretative aids, if a contract provision is still ambiguous it must be construed against that party which is responsible for its drafting. *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239, 247 (Mo.Ct.App.1982).

▮ As to the duties owed by Defendants to Brazil, Missouri law implies a duty of good faith and fair dealing in every contract. *See Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 368 (Mo.Ct.App.1996). Missouri statutory law also compels the duty of good faith upon corporate individuals and entities. The Missouri Limited Liability Company Act states that all "authorized person[s] all discharge [their] dut[ies] under sections 347.010 to 347.187 and the operating agreement in good faith, with the care a corporate officer of like

position would exercise under similar circumstances[.]" Mo.Rev.Stat. § 347.088. In addition to the duty to act in good faith, majority owners of corporations owe a fiduciary duty to the minority owners. *Peterson v. Kennedy*, 791 S.W.2d 459, 463 (Mo.Ct.App.1990).

### 1. Expulsion of Brazil

Applying the above rules, the Court finds that the Jefferson City and Marshall operating agreements unambiguously authorize the expulsion of a member. The Court, will therefore not declare that the expulsion of Brazil from the Jefferson City and from the Marshall LLCs was wrongful. The Clinton operating agreement, however, does not provide for the expulsion of general or Supervising Members. Thus, the Court concludes that the majority of the Clinton LLC did not have the authority to unilaterally expel Brazil.

■ As to the Jefferson City and the Marshall operating agreements, they are unambiguous in granting the majority in interest of the LLCs the power to expel a member. The clear language of Article 7 of the operating agreement states, "[i]f any Member shall, in the opinion of a majority in interest of the Members … act in any manner inconsistent with the good faith observable between Members to such an extent as to render it impracticable for the then Members to carry on the Company business together, the offending Member may be expelled from the Company." Pl. Ex. 74. This provision clearly grants the authority to expel a member and states for which causes such expulsion may be exacted. Brazil does not so much argue that the Jefferson City and the Marshall LLCs lacked authority to expel him, rather he asserts that the Members did not follow proper procedure and did not expel him for a cause accorded in Article 7.01(a) of the operating agreement.

Article 7.01(a) of the Jefferson City and Marshall operating agreements does not contain any provision setting forth the proper procedure for expelling a Member. Article 5.06 does state that a Managing or Supervising Member may be removed upon a "vote of the majority in interest." Brazil interprets this to mean that the Members of the LLCs were required to have a meeting, giving notice to Brazil ten days prior, and then voting on his expulsion. Brazil's interpretation of this Article is inconsistent with the plain language of Article 5.

Based on the language of the operating agreement, Article 5.06 does not apply to the expulsion of a Member from the LLC. Rather, this particular article addresses the process for removing a Member from his position as Supervising or Managing Member, not expulsion of the Member entirely. Article 5.06 uses the terms "added, removed, and /or replaced." It does not mention expulsion. Furthermore, Article 5.06 only applies to Managing and Supervising Members, not Members generally. Expulsion of a Member from the LLC is therefore governed by Article 7.01 which only requires a determination by the majority in interest, not a meeting or a vote.

As to whether Brazil's expulsion from the Jefferson City, and Marshall LLCs was wrongful, the Court is unable to declare that it was. Genuine issues of material fact remain as to whether the majority in interest believed that continuing to operate with Brazil was "impracticable". Brazil urges that this Court can grant summary judgment on this issue because the reasons cited by Defendants for Brazil's expulsion are stale and concocted. That, however, is quintessentially an issue of credibility. At this stage in the litigation, the Court is unable to assess the credibility of facts or testimony, but must, instead, view all facts and evidence in a

light most favorable to the non-moving party. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1194 (8th Cir.1995). Using this standard, the Court finds that genuine issues of material fact exist as to whether Defendants' reasons for expelling Brazil met the requirements outlined in the Articles.[1]

 The Clinton LLC's operating agreement provides a different situation. The Article 7.01(a) language in the Jefferson City and Marshall operating agreements is not present in the Clinton operating agreement. Instead, Article 7.01 of the Clinton agreement only pertains to termination or expulsion of a Designated Managing Member. Brazil contends that because he was a Supervising Member, and not a Managing Member, he could not be expelled from the LLC.

Defendants respond by pointing to a Supervising/Managing Member Agreement, signed by all the members, in which changes were made to the compensation schedule in the event a Supervising or Managing Member withdrew or was terminated. The agreement specifically stated that "[i]f the Supervising Member ... is expelled, is terminated, or voluntarily withdraws," the Supervising Member's compensation was to be reflective of the amount of time the Supervising Member had been in service. Defendants argue that this agreement amends the operating agreement and allows for the expulsion of Supervising Members. While Defendants' argument is logically cohesive, it is contrary to established Missouri law.

Defendants' reasoning is that by including the language "if the Supervising Member is expelled" the parties clearly intended to amend the Clinton operating agreement and allow for the members to expel the supervising member. As a matter of pure form, the Supervising/Managing Member Agreement could amend the operating agreement because it is signed by all the members of the Clinton LLC. *See* Pl.Ex. 32, Article 11.10. As a matter of corporate power however, the agreement cannot be construed so as to give the LLC members expulsion authority for two reasons.

First, there is evidence that the parties did not intend to include the power to expel a member similar to that of the Jefferson City and the Marshall LLCs. An earlier draft of the Clinton operating agreement contained expulsion provisions identical to those contained in the Jefferson City and Marshall operating agreements' Article 7.01(a). Pl.Ex. 31. The parties however apparently did not want that language included because the original provisions of Article 7.01 are stricken through, as indicated in Plaintiff's Exhibit 31. There is also a handwritten notation on the first page of Plaintiff's Exhibit 31 which reads "7.01 A) B) C) out". These changes are then reflected in the final, signed version of the Clinton operating agreement. Pl.Ex. 32. This is conclusive evidence that the parties did not want to include general expulsion power in the operating agreement. Accordingly, the Court interprets the Clinton operating agreement so as to give effect to that intention.

The second reason the Supervising/Managing Member Agreement does not grant expulsion authority is because such a construction would be contrary to established

---

1. Because genuine issues of material fact exist as to whether Brazil was properly expelled from the Jefferson City and Marshall LLCs, all of Brazil's other requests for judgments are denied as to those specific companies. Because a jury could conclude that Brazil was

properly expelled, the Court will not grant judgment that Defendants breached fiduciary duties or duties of good faith or that Defendants must disgorge distributions. All of those claims depend upon the resolution of material facts at trial.

law. Under Missouri law, a corporation organized for gain, such as the Clinton LLC, has no power of expulsion unless granted it by its charter or by general municipal law. *Purdy v. Bankers' Life Ass'n of Des Moines*, 101 Mo.App. 91, 74 S.W. 486, 490 (1903). If a corporation is given expulsion power, such power extends only as far as the language of the grant so justifies, when strictly construed, and may not be exercised for any cause other than those enumerated. *Id.*

In the present case, the language upon which Defendants rely to argue expulsion authority speaks obliquely of the event of expulsion. Strictly construed, this language is not an affirmative grant of power. Furthermore, even if the parties intended to implement the power to expel members, the language does not enumerate the causes for which a member may be expelled. Absent these specifications, the power to expel a member, if present at all, would have no enumerations and would be invalid. Even the Missouri Limited Liability Company Act states that members of LLCs may only be expelled "in accordance with the operating agreement." Mo.Rev. Stat. § 347.123(3). This appears to be a codification of the common law that, absent express authority in the articles, a corporation does not have an inherent, unspecified power to expel members. Under applicable Missouri law, the Court concludes that the language in the Supervising/Managing Member Agreement is not an affirmative grant of expulsion authority and, even if it were intended to be, it does not enumerate the causes for which a member may be expelled.

Given the finding that the Clinton operating agreement did not provide the members with the authority to expel another member, the Court must conclude that the expulsion of the Clinton LLC was wrongful. Having so concluded, it remains to be determined at trial the value of the interest in the Clinton LLC Brazil lost as a result of being wrongfully expelled.

### 2. Good faith and fiduciary duties

As reflected above, the duty to conduct affairs in good faith is incumbent upon all members of the LLC. Additionally, the majority interest holds a fiduciary duty toward the minority interests. Brazil, as a former member of the LLCs, was owed a duty of good faith and was owed a fiduciary duty by the majority in interest. That, however, is as far as the Court is willing to go in analyzing the duties owed to Brazil. The Court will not declare Defendants in breach of those duties, as requested by Brazil.

### B. Conversion of distributions and other judgment requests.

Brazil asks this Court for a judgment that Defendants have converted distributions owed to Brazil. Brazil also argues that the Court should enter judgment in his favor that he receive a 5% distributive interest on the Jefferson City LLC which he alleges he was not paid. Brazil further contends that the Court should enter judgment that Defendants engaged in self-dealing by commingling funds and by selling Brazil's interests in the LLCs to other parties.

Most of Brazil's claims for judgments are based on his interpretation of the events of this case. Essentially, he contends that he is entitled to summary judgment, if the Court were to believe everything he alleges. Unfortunately for Brazil, the Court cannot accept his version of events verbatim. That is not the standard of summary judgment. Given that the majority of Brazil's requests for judgments, other than the interpretation of the operating agreements, are based upon material facts which are at issue, the Court must deny Brazil's requests.

 As to Brazil's requests for other equitable relief such as disgorgement, those requests are also denied. Brazil has failed to allege or prove that he would have an inadequate remedy at law so as to justify the imposition of equitable remedies. *See Superior Press Brick Co. v. City of St. Louis*, 155 S.W.2d 290, 294 (Mo.Ct. App.1941) (articulating the standards for imposing equitable remedies).

The one other claim that the Court is able to address at this point in the litigation is Brazil's claim that he was shorted 5% of his interest in the Jefferson City LLC. Brazil claims he was paid the equivalent of a 10% ownership interest upon his termination from the Jefferson City LLC, but that, in actuality, he owned 15% of the company. Brazil claims that he is entitled to a judgment declaring that Defendants owe Brazil the 5% difference between what he was paid and his actual ownership interest. Additionally, Brazil requests a judgment that the 5% interest sold by Brazil to Excel III in March 2001 was fraudulent and that any gains or profits made by Excel III as a result of that ill-gotten 5% interest should be disgorged and paid to Brazil. Brazil's claim for disgorgement is resolved by the above paragraph. If it is determined at trial that Excel III breached some duty owed to Brazil in purchasing the 5% interest, then Brazil will be entitled to the amount of damages arising therefrom. That decision must, however, be made by the trier of fact.

As to Brazil's claim he should have been paid more upon his termination, the Court is able to resolve that issue. There appears to be no genuine issue of material fact but that Brazil owned 15% of the Jefferson City LLC at the time the majority expelled him. *See* Pl. Amend. Complaint ¶ 24 *and* Def. Answer ¶ 24 (stating that Brazil, over the course of his membership with the Jefferson City LLC, ob-

tained an additional 10% interest). Based on the facts as alleged by Brazil, and admitted by Defendants, as of September 26, 1996, Brazil owned 20% of the Jefferson City LLC. Brazil then sold a 5% share to Excel III. That would have put Brazil's ownership at 15% as of the date of his termination. The check given to Brazil by Excel III unambiguously purports to compensate Brazil for a 10% share. *See* Pl. Amend. Complaint Ex. "X". Because Brazil owned 15% of the Jefferson City LLC, his compensation upon his termination, regardless of whether such termination was wrongful, should have been for an amount equal to a 15% ownership interest, not a 10% interest. As to exactly what that amount should be is an issue of fact for trial.

## CONCLUSION

For the reasons set forth above, Plaintiff Kevin Brazil's Motion for Partial Summary Judgment is granted in part, denied in Part. According, it is ORDERED that:

1) The operating agreements governing the respective LLCs are to be read in a manner consistent with the interpretations above.

2) Plaintiff's motion for summary judgment on the issue of whether Defendants wrongfully expelled Plaintiff from the Jefferson City and Marshall LLCs is DENIED.

3) Plaintiff's motion for summary judgment on the issue of whether Defendants lacked authority to expel Plaintiff from the Clinton LLC is GRANTED. No genuine issues of material fact remain but that the Clinton LLC operating agreement does not provide the Members the authority to expel another member.

4) Plaintiff's motion for summary judgment on the amount of his ownership interest in the Jefferson City LLC is

GRANTED. Plaintiff is at least entitled to compensation in an amount reflective of a 15% ownership interest.

5) All of Plaintiff's other motions for summary judgment are DENIED.

IT IS SO ORDERED.